## O. S. LATTIMORE v. E. W. PROVINE ET AL.

### Decided November 9, 1901.

**1.—Vendor's Lien Note—Assignment After Maturity—Defenses.**

Where a vendor's lien note is assigned after maturity the assignee takes it subject to any defense good against the assignor, and can not enforce the lien against portions of the land previously conveyed by the vendee with releases from the vendor.

**2.—Same—Notice to Vendor—Subsequent Conveyances.**

Where a purchaser of land on which a vendor's lien is retained plats it for town lot purposes, the recording of the plat and subsequent conveyances charges his vendor with constructive notice thereof, and of the warranties in the deeds and the order of alienation.

**3.—Same—Release of Lien—Inverse Order of Alienation.**

Lots so platted and conveyed by the purchaser are subject to the lien of his vendor in the inverse order of their alienation, and where such vendor releases a lot so conveyed, he thereby relieves from his lien lots previously conveyed to the value of the lot released, and one who subsequently purchases the vendor's lien note from him after maturity is bound by such release.

**4.—Same—Assumption of Lien Discharged.**

Where a vendee of land subject to the vendor's lien conveyed part of it to a grantee who assumed in the deed to him a proportionate part of the vendor's lien debt, and afterwards, on the conveyance of other parcels, the vendor, at the vendee's request, released them from his lien, the vendee receiving part of the purchase money, the lien securing the grantee's assumption was also released, and could not be foreclosed by an assignee of such vendor's lien who took the lien note after maturity.

Appeal from Tarrant. Tried below before Hon. Irby Dunklin.

*Jas. G. Browning* and *Pruit & Smith,* for appellant.

*N. H. Lassiter, C. Von Carlowitz, Orrick & Terrell, Q. T. Moreland,* and *R. W. Flournoy,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This is a suit upon a promissory note of $5000 executed by E. W. Provine and F. M. Marple to Sam Evans, on the 20th day of August, 1890, due five years after date, and by said Evans sold and assigned to appellant on the 15th day of April, 1899, which transfer was duly recorded on the 8th day of January, 1901. This note was given for part of the purchase money due to the said Evans on a small tract of land lying in the suburbs of Fort Worth, and a vendor's lien on said land was expressly retained in the deed of conveyance executed by the said Evans to said Provine and Marple, who afterwards divided said land into blocks and lots and sold the same to

various and divers persons. The deed from Evans to Provine and Marple was duly recorded on August 22, 1890. It was admitted that $4460 had been paid to Evans on said note before he assigned it to appellant, and that there was a balance due thereon at the date of this judgment for $1805.40, and personal judgment was rendered· in the District Court for that amount in favor of appellant, but because the court below refused to find and enforce certain vendor's liens on certain lots, he has prosecuted this appeal.

The record in this case is voluminous, and the sales and transactions are many and varied, but as they are nearly all evidenced by written instruments, abstracts of which are contained in the record, we deem it unnecessary to incumber this opinion with detailed conclusions of facts. The material facts of the case necessary to an understanding of this opinion are as follows:

Sam Evans held a vendor's lien on all the lots to secure his $5000 note dated August 20, 1890. On October 9, 1890, F. M. Marple conveyed all of his undivided half interest in all the lots except 1 and 7 in block 1, and 5, 6, and 9 in block 2, to Lewis F. Butler, who paid him $1162.50 in cash and assumed and promised to pay to Evans $2500, one-half of the note aforesaid. A lien was expressly retained in the deed to secure the payment of said sum. This deed was filed for record on the day of its date, and duly recorded. Butler conveyed his interest soon afterwards to R. W. Marple, and on August 3, 1891, said Provine and R. W. Warple conveyed lots 2, 12, 13, 16, 17, and 18, in block 1, and lots 1, 2, 3, 4, 11 to 18, in block 2, inclusive, to A. J. Dixon, which deed was recorded November 30, 1891. In consideration of this conveyance Dixon assumed and promised to pay the $5000 note due to Evans, and a lien was expressly retained in the deed to secure the promise.

Before either of the sales mentioned above Provine and Marple conveyed lot 7 in block 1 by general warranty deed to James A. Harrall. The date of this conveyance is given in appellant's brief and the record as August 11, 1890, which it will be observed is prior to the date of Evans' deed to them. It was recorded September 8, 1890, and consequently neither the Butler nor the Dixon assumption fixed any lien upon this lot, but it was subject alone to Evans' lien. Indeed the record shows that this lot was excepted from the sale to Butler, and was not embraced among the lots sold to Dixon.

On the 3d day of November, 1890, Provine and Butler conveyed to Burns & Noble lot 6 in block 1, after having conveyed to Clarence Wallace by general warranty deed on November 1, 1890, lot 7 in block 2, and these were the first three lots sold off after the subdivision was made.

Lots 6 and 7 in block 1 belong now to R. C. Kinder, and lot 7 in block 2 belongs to the Waples-Platter Grocer Company, and the vendor's lien held by Evans has never been expressly released on the Kinder lots. But the record shows that all the other lots upon which the plaintiff claims a foreclosure of the Evans lien had been, between July 6,

1891, and April 28, 1894, expressly released by instruments duly executed by Evans and placed upon record before the plaintiff Lattimore became the owner of the $5000 note, except two or three lots the releases of which were established by oral evidence and do not appear to have been recorded, but as the owners of these lots were in actual possession at the time and before Lattimore bought the note from Evans, and as he bought it long after its maturity, we think that he must be held to have had notice of these releases, though not placed upon record. At all events, having purchased the note after maturity, he took it subject to all the defenses which could have been pleaded against it in the hands of Evans.

On August 1, 1893, the Chicago, Rock Island & Texas Railway Company condemned for railway purposes twelve lots in block 2 by proper legal proceedings in the County Court of Tarrant County, and paid into that court the sum of $3600, which was accepted and received by Evans, Provine and Marple, and Dixon in full satisfaction of the rights and liens of the said owners and lienholders on said twelve lots. Of this sum, it seems, Evans agreed to accept $2000 and credit his note therefor, and surrendered the balance of $1600 to Provine and Marple, for which amount no credit was placed upon the $5000 note.

After April 28, 1894, the date of the last release executed by Evans, and between May 11, 1894, and June 14, 1899, appellant at different dates became the owner of six lots which had been sold off by Provine and Marple after the dates of the sales of the Kinder lots and the Waples-Platter lot aforesaid, as follows: Lot 12, block 1, sold by Provine and Marple to Dixon, August 3, 1891,—Lattimore bought it August 17, 1899, after he bought the Evans note which he then held; lot 3, block 1, sold by Provine and Marple to Musick July 6, 1891,—Lattimore bought it June 6, 1899, after he bought the Evans note; lots 4, 5, 14, and 15 in block 1, sold by Provine and Marple to Edwards May 11, 1894, and to Lattimore, as follows: Lot 5, January 2, Lattimore assuming to pay $170 of the Evans note; lot 14 (the record furnishes no date of deed to Lattimore) ; this lot, however, had been released by Evans to Provine and Marple on April 28, 1894, before Edwards bought it, and was not subject to any lien when Lattimore bought it; lots 4 and 15 on May 15, 1896,—Lattimore on lot 4 assuming to pay on the Evans note $200, and on lot 5, $170, and the others he took subject to the Evans lien.

The value of the six lots owned by Lattimore is $200 each, and all were subject to Evans' lien when he bought them except lot 14, and all were sold off by Provine and Marple after they conveyed the two Kinder lots and the Waples-Platter lot.

The evidence is sufficient to warrant the conclusion that Evans knew, or at least had notice by the record of the plat and deeds to subsequent purchasers, that Provine and Marple had platted the land they bought of him into blocks and lots, and were and had been selling it off in lots

to various and divers persons, who had recorded their deeds and were in possession of said lots (see Ballard v. Carter, 71 Texas, 164; Davis v. Rankin, 50 Texas, 279; Burson v. Blackley, 67 Texas, 11 et seq.), and that the Kinder lots and the Waples-Platter lot had been first sold and conveyed with covenants of general warranty, and that all the rest were sold afterwards.

The learned judge of the District Court found that the six lots owned by appellant were worth $200 each and tolled his lien $1200, leaving a lien on the Kinder lots of only $605.40, upon the theory that the six lots acquired by appellant were each and all subject to the Evans lien, and had been sold off after the Kinder lots were sold, and that they were liable in the inverse order of alienation. We find no error in the result reached, for as Evans had released lot 14 in block 1, he thereby reduced his lien on the lots first sold off to the value of the lot released, and Lattimore is bound by the action of Evans.

In Burson v. Blackley, 67 Texas, 12, Justice Stayton in delivering the opinion of our Supreme Court quotes with approval from Pomeroy's Equity, the following: "When the equities of the various owners are unequal, so that their respective parcels are liable in the inverse order of alienation, if the mortgagee, having notice of this situation, releases a parcel which is primarily liable, he thereby discharges or releases all those parcels, which are subsequently liable, *in the order of their several liabilities,* from an amount of the mortgaged debt equal to the value of the parcel released. If the value of the parcel released equals the mortgage debt, then all the subsequent parcels are wholly relieved frim liability; if the value is less than the mortgage debt, the subsequent parcels can at most be liable in their order only for the excess of the debt over such value." Pom. Eq., 1226; Jones on Mort., 722.

Nor did the court err in refusing to declare and enforce the lien on the Kinder lots and the Waples-Platter lot,—whether the Waples-Platter lot had been released or not, for it does appear from the evidence and we so find and conclude, that Evans surrendered to Provine and Marple $1600 of money paid on lots condemned in 1893, which ought to have gone to reduce the lien on the $5000 note,—as the whole value of the Rock Island lots should have been applied to the lien before the Kinder lots or the Waples-Platter lot would be liable at all; and besides, it appears that Evans released the lien on some eight or ten other lots which in the inverse order of their alienation were liable to their full value before the Kinder lots and the Waples-Platter lot could be subjected, finding as we do that Evans had notice of the sales constructive, if not actual.

The court did not err in refusing to foreclose the liens created by Butler's and Dixon's assumptions, because we conclude, as the court evidently did below, that Provine and Marple had agreed to and assented for Evans to execute the releases to the lot purchasers, at the times, for the sums, and in the manner as testified by Evans, and the evidence establishes that in nearly every instance Provine and Marple

received part of the purchase money paid for said lots and requested the releases to be made, and in several instances got all of it.

These views dispose of every material issue raised in the case, and finding no error in the judgment, it is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

We erred in stating in our original conclusions that $1600 of the money paid into court on the condemnation proceedings by the Chicago, Rock Island & Texas Railroad Company was never credited on the Evans $5000 note. Upon a closer examination of the voluminous statement of facts we find that it was so credited. But as we find also that there were six lots released by Evans before he transferred the note to Lattimore, to wit, lots 5, 6, 7, 8, 9, and 10 in block 2 of said Provine & Marple addition, which by the inverse order of alienation were liable to the Evans vendor's lien before the Waples-Platter and Kinder lots, and that these lots were worth from $300 to $500 each, according to the evidence of Clarence Wallace, which seems to be undisputed, the error we made becomes harmless, for by reason of the releases of these six lots the lien on the Kinder lots and the Waples-Platter lot was clearly released, and we therefore overrule the motion for rehearing.

*Overruled.*