J. O. WOOD v. F. L. O'HANLON.

Decided May 9, 1908.

</div>

**1.—Vendor and Vendee—Executory Contract—Subsequent Vendee—Rescission —Adjustment of Equities.**

Although the equities between the subsequent owners of various parcels of land sold by executory contract, can not prevent the vendor from enforcing his lien against all parcels, yet, after the vendor has received notice of the subsequent conveyances, the equities affect him to such an extent that he can not deal with the whole or any part of the premises or with the owner of any parcel, by release or agreement, so as to disturb the equities subsisting between the various owners, or destroy the order of liability, or defeat their rights of ratable contribution, or of complete or partial exoneration.

**2.—Same.**

In an action of trespass to try title by a vendor of several town lots by executory contract against one holding some of said lots under the original vendee, evidence considered, and held that the vendor had so dealt with his vendee and with the property as to preclude a recovery.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

No brief for either party reached the reporter.

TALBOT, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by the appellee against the appellant, to recover lots Nos. 2 and 3 in block No. 30 of Elliott's Addition to the city of Sherman. The case was tried by the court without a jury and from a judgment in favor of appellee the appellant has appealed.

The material facts, which are undisputed, are as follows: The title to the land in controversy was originally in F. L. O'Hanlon, the plaintiff; and on May 10, 1902, the plaintiff, O'Hanlon, sold to one, F. A. Jenkins, the following described property, to wit: Lots 2 and 3, for the recovery of which this suit was brought, and lots 4, 5, 6 and 7, all in block 30 of Elliott's Addition to the city of Sherman, the consideration being a note given by F. A. Jenkins for $200 and the further consideration of a transfer by Jenkins, without recourse, to O'Hanlon of five vendor's lien notes aggregating $575, constituting a second lien on lot 11 in block 5, of Binkley's Addition to the city of Sherman, there being three other notes which constituted a first lien on said lot 11. The five second lien notes and the three first lien notes were executed by one Voight, in consideration of the transfer by F. A. Jenkins to him, Voight, of said lot No. 11 in block 5. In the deed from Jenkins to Voight an express vendor's lien was retained to secure the payment of the eight notes, which eight notes together aggregated in nominal value $975. Voight also paid Jenkins the sum of $25 cash. The three first vendor's lien notes executed by Voight were sold by F. A. Jenkins to S. E. Elliott prior to the time when plaintiff sold the land in controversy to Jenkins. At the time plaintiff sold the land in controversy to Jenkins he reserved an express vendor's lien to secure the payment of the $200 note which he delivered to O'Hanlon, and to secure the payment of the five second vendor's lien notes which Jenkins transferred to him.

On the 17th day of June, 1902, F. A. Jenkins for a valuable cash consideration sold to the defendant, J. O. Wood, lots 2 and 3 in block 30 of Elliott's Addition, which two lots embrace the land in dispute in this suit. The deed from Jenkins to Wood was a general warranty deed absolute on its face. The deed from O'Hanlon to Jenkins was never placed of record and the same is now lost or mislaid, and after diligent inquiry could not be found. The said J. O. Wood never saw said deed and has never had possession of it, and at the time he made the purchase of his land he never made any investigation of the record to ascertain the condition of the title. After the first one of the three first vendor's lien notes, which were owned by Elliott and which constituted the vendor's lien on lot 11 purchased by F. M. Voight, became due, the said Voight either refused or neglected to pay the same or any part thereof, and all three of said notes were placed in the hands of an attorney for collection. The plaintiff, F. L. O'Hanlon, in order to avoid the expense and annoyance of a suit, and in order to further protect himself against loss on the five second vendor's lien notes, and which lien notes were subject to the first vendor's lien, bought all three of those vendor's lien notes from Elliott, for which he paid in cash or its equivalent $462.50. By the purchase of the three notes from Elliott O'Hanlon became the owner, legal and equitable, of the eight notes which

constituted liens on said lot 11. At the time that O'Hanlon purchased the notes from Elliott, the defendant, Wood, had no notice that default had been made in the payment of the notes owned by Elliott. Plaintiff purchased the three Elliott notes on the 7th day of May, 1903. Some time in January, 1903, Voight paid to plaintiff the sum of $30, which was to be placed as a credit on the five second vendor's lien notes executed by him to Jenkins. This was all the money that Voight ever paid O'Hanlon. He never paid anything on the three first vendor's lien notes so far as the testimony discloses. All of the notes mentioned, both in the deeds to Voight and in the deed to Jenkins, bore interest as specified in said several deeds where said notes are respectively described. On August 18, 1903, the plaintiff bought from F. M. Voight said lot 11 in block 5 of Binkley's Addition, and released the said Voight from all further responsibility on account of the said several notes which he held against said Voight and against said property, and at the time the said transaction between Voight and O'Hanlon took place, O'Hanlon was aware that Jenkins had sold lots 2 and 3 to the defendant Wood.

On the 28th day of August, 1903, O'Hanlon made an agreement by which Jenkins reconveyed all his interest in lots 2, 3, 5, 6 and 7 to F. L. O'Hanlon, and the said Jenkins was released by O'Hanlon from the payment of anything on the $200 note, which the said Jenkins had given as a part of the consideration under the original trade between him and O'Hanlon. Lot No. 4 was not embraced in the above transfer. The same had been by Jenkins conveyed to some one, and one Fielder had erected a house on said lot, and Fielder had bought the interest of O'Hanlon in said lot from O'Hanlon and paid him $150 therefor. At the time of the transfer by Voight and Jenkins to O'Hanlon, Wood was not aware of them and had no actual notice of the same for some time afterwards. After O'Hanlon bought the Voight property, lot No. 11 in block No. 5, he sold the same for the consideration of a house and lot in Cressen, Texas, and $10 cash, and the further consideration of a $500 note, payable $10 per month until the same is paid in full. On one occasion before Wood bought lots 2 and 3, he had a talk with O'Hanlon, and Wood asked O'Hanlon if the title to said lots was good, and O'Hanlon told him if he had not thought so he would not have had anything to do with them, and that was the substance of the conversation on said occasion. It was some time afterwards before Wood told O'Hanlon that he had purchased the lots. The six lots which O'Hanlon sold to Jenkins were worth $75 apiece. After plaintiff had lots 5, 6 and 7 reconveyed to him, he sold same to another person for $250, one-half was paid by painting plaintiff's house and the other half by note for $125, which plaintiff sold.

The appellant pleaded, in addition to the plea of not guilty, that appellee had received property and money of value more than sufficient to pay off and discharge all of the notes which he held against the land in controversy; but that if he was mistaken in this, then that appellee be required to account for all the money received by him as a payment on said notes, and for the fair cash market value of all property received by him from the said Jenkins and Voight, and that he be required to credit the full amount of said money and the market value of said property on said indebtedness. That if, after so applying said money

and the value of said property, there remained due and unpaid any amount for the payment of which appellant's lots were liable, then he was ready and willing to pay the same. Appellant further plead, in substance, that the acceptance by appellee of the deed from F. M. Voight, conveying to him said lot No. 11 in block No. 5, and the release of Voight from the payment of the five vendor's lien notes against said lot and which were given by Jenkins to appellee in part payment for said lots Nos. 2, 3, 4, 5, 6 and 7 in block No. 30, had the effect of cancelling said five notes, and that by receiving a reconveyance of lots 5, 6 and 7 and selling said lot 4, which were of greater value than the amount due on the purchase price of all of said lots, appellee was estopped to sue and recover lots 2 and 3, bought by appellant from Jenkins.

All of the assignments of error complain of the trial court's conclusions of law, and the following only need be stated.

"First, the court erred in his conclusion of law that the appellee, O'Hanlon, is entitled to the land in controversy; second, the court erred in his conclusion of law that there were no equities between the plaintiff and defendant to be adjusted; third, the court erred in not concluding as a matter of law from the facts found that the vendor's lien retained against the lots in controversy had been fully paid off, canceled, released or discharged."

We are of the opinion that under the foregoing pleadings and facts there existed equities between the appellant and appellee to be adjusted and that the court erred in rendering judgment in favor of appellee for the land. As shown by the facts the lots in controversy are two of seven lots conveyed by appellee, O'Hanlon, to F. A. Jenkins May 10, 1902, and by Jenkins to appellant, Wood, for a cash consideration, June 17, 1902. The consideration for the conveyance by O'Hanlon to Jenkins for the entire seven lots, was Jenkins' note for $200, payable one year after date, and five vendor's lien notes of $115 each, aggregating $575, executed and delivered by F. M. Voight to the said Jenkins for a part of the purchase money for lot No. 11 in block No. 5 of Binkley's Addition to the city of Sherman, said five notes having been transferred by Jenkins to O'Hanlon without recourse. There were three other notes given by Voight to Jenkins in consideration of the conveyance by the latter to the former for said lot No. 11, which constituted a first lien on said lot. When appellee, O'Hanlon, became the owner of the five vendor's lien notes mentioned he then purchased the three first lien notes, which were past due, and in consideration of a conveyance to him by Voight of said lot 11, canceled the said first lien notes, and released the said Voight absolutely from the payment of the five vendor's lien notes. At the time O'Hanlon bought the three first lien notes appellant did not know that default had been made in their payment, and when O'Hanlon bought lot No. 11 from Voight and released him from all liability on, and payment of, the several notes which he held against the said Voight and said lot No. 11, he knew that appellant had purchased the lots sued for from Jenkins. After this O'Hanlon received a conveyance back from Jenkins of the seven lots, which included the two lots appellant had purchased and which are in controversy in this suit,

and released Jenkins from the payment of the $200 note given as a part of the consideration for the purchase of the said lots by Jenkins.

The acceptance by O'Hanlon of the conveyance from Voight of lot No. 11, in consideration of the release of Voight from all responsibility on, and payment of, the notes given by him for said lot in his purchase of the same from Jenkins, which included the said five notes given by Jenkins to O'Hanlon in the purchase of the seven lots, two of which are the lots in controversy, was a rescission of the conveyance by Jenkins to Voight of lot No. 11, and operated as a payment and cancellation of said notes. These notes having been thus paid off and discharged appellee could not insist upon their payment again. They ceased to constitute a lien upon the lots involved in this suit and said lots remained liable only for the payment of the $200 note given by Jenkins to O'Hanlon for a part of the purchase price of the seven lots. The contract for the purchase of these lots being executory,—the superior title thereof remaining in O'Hanlon—it was incumbent upon appellant to show, in order to defeat this suit, that said $200 note had been paid in whole or in part, and if in part only, then offer to pay the amount remaining unpaid; or that appellee had so dealt with the lots upon which his lien existed to secure the payment of said note, by making a conveyance of all or some of them, with knowledge of appellant's equitable rights, as to preclude a recovery of the lots in controversy. Has appellant so shown? We think so.

It appears from the evidence, without contradiction, that on the 28th day of August, 1903, Jenkins reconveyed all of his interest in said lots Nos. 2, 3, 5, 6 and 7 to appellee, O'Hanlon, in consideration of which Jenkins was released by O'Hanlon from the payment of said note of $200. Having transferred to O'Hanlon the said five notes without recourse he was not personally responsible on them, and no release from the payment of those notes was necessary. Lot No. 4 was not embraced in this deed for the reason that prior to its execution Jenkins and appellee had conveyed it to other parties. For his interest in said lot No. 4 appellee received the sum of $150. After Jenkins reconveyed lots 2, 3, 5, 6 and 7 to appellee he, appellee, sold and conveyed lots 5, 6 and 7, for a consideration of $250 to a third party whose name does not appear. Before any of these transactions occurred O'Hanlon had been informed and knew that appellant Wood had purchased from Jenkins said lots 2 and 3, which the said O'Hanlon seeks to recover in this suit. Indeed, the record shows that in reconveying the lots to appellee Jenkins declined to warrant the title to lots 2 and 3, which he had previously sold to appellant, and the warranty clause of the deed reads, that he warrants the title to lots reconveyed only as his interest may appear. So that it was shown that before this suit was instituted, appellee had received from sales of lots 4, 5, 6 and 7, which were equally bound with lots 2 and 3 for the payment of the $200 note in question, the aggregate sum of $400, $150 of which was received before the rescission of his contract of sale of said lots to Jenkins, and $250 afterwards. These sums, of course, were sufficient to pay off and discharge said $200 note, and if it can be said that appellant was not entitled to have the amount of $250 received after such rescission applied as a credit on same, we think his right to have the $150 received before such rescission so ap-

plied, can not be controverted. But we prefer to rest our decision upon the ground that appellee's sale of said lots, 4, 5, 6 and 7—the value thereof being more than sufficient to pay the $200 note—defeats his right to recover lots 2 and 3 bought by appellant from Jenkins. The law applicable to this phase of the case is announced, in Burson v. Blackley, 67 Texas, 5, in the following language: "The right of a vendor, who has made an executory contract to convey land, to rescind it on failure of the vendee to pay the purchase money, has been recognized in this State in many cases. Rescission is one of the remedies such a vendor may have to relieve him from further obligation under the executory contract. He may, however, waive such right, and have the land subjected to sale for the payment of the purchase money. On rescission of the contract to sell, the vendor acquires no higher degree of title than he had before, but is simply relieved from the obligation of the executory contract. . . . There must be a total rescission, or none at all. If the vendor in an executory contract to sell land elects not to rescind the contract, but to enforce it, he is to be deemed a creditor holding the superior lien on the thing which is the subject-matter of the executory contract. In effect, he stands as a mortgagee is held to stand in those States in which it is held that the legal title passes by a mortgage. This being true, his rights and duties as to persons who, through the vendee, have acquired equitable rights, must be determined by the same rules as would determine the rights and duties of such a mortgagee towards a vendee or other person acquiring equities from or through a mortgagor.

"Although the equities between the subsequent owners of various parcels of mortgaged premises, whether equal or unequal, do not prevent the mortgagee from enforcing the mortgage, if necessary, against all those parcels, yet, after the mortgagee has received notice of the subsequent conveyances, the equities affect him to such extent that he can not deal with the whole premises, or with any parcel thereof, or with the owner of any parcel, by release or agreement, so as to disturb the equities subsisting among the various owners, or to destroy their rights of precedence in the order of liability, or to defeat their rights of ratable contribution, or of complete or partial exoneration. The release of one parcel or share would release all the other parcels from the same proportionate amount of their respective original liabilities, which the value of the part released bears to the value of the mortgaged premises. One owner being released, all the others are entitled to a pro rata abatement. When the equities of the various owners are unequal, so that their respective parcels are liable in the inverse order of alienation, if the mortgagee, having notice of this situation, releases a parcel which is primarily liable, he thereby discharges or releases all those parcels which are subsequently liable, in the order of their several liabilities, from an amount of the mortgage debt equal to the value of the parcel released. If the value of the parcel released equals the mortgage debt, then all the subsequent parcels are wholly relieved from liability; if the value is less than the mortgage debt, the subsequent parcels can at most be liable, in their order, only for the excess of the debt over such value. Pom. Eq., 1226; Jones Mort., p. 722."

So that, as similarly said in the case cited, by conveying lot No. 4

and accepting a reconveyance to himself of lots Nos. 5, 6 and 7, and subsequently selling them to another person, appellee has deprived appellant, the vendee of Jenkins, of the power to have said lots, which, as between him and Jenkins were primarily liable for all the purchase money agreed by Jenkins to be paid O'Hanlon, sold, and the proceeds thereof applied as the equities subsisting between Jenkins and appellant required; and so, by reason of his own act, O'Hanlon must be held to account for the value of said lots 4, 5, 6 and 7 in liquidation of said $200 note. And the undisputed evidence showing that the value of said lots exceeds the amount of said note, lots 2 and 3 in controversy in this suit have been discharged from liability on the lien, and appellee has no right of action for the recovery of said lots.

The judgment of the court below is reversed and judgment is here rendered for appellant.

*Reversed and rendered.*

Bookhout, Associate Justice, dissents.