DAYTON LUMBER COMPANY v. E. A. STOCKDALE.

Decided March 30, 1909.

**1.—Charge—Withdrawal of Issue.**

When the probative force of the evidence offered upon an issue made by the pleadings is so weak that in legal contemplation it falls short of being any evidence from which the jury could reasonably infer the existence of the alleged fact, the trial court is not required to submit the issue.

**2.—Contract—Evidence.**

Evidence, in an action on account for hauling timber, held insufficient to raise the issue of a contract by the plaintiff to haul all the timber on a certain tract of land.

**3.—Same—Fraud—Adverse Interest of Agent.**

Where the plaintiff contracted with the agent of defendant to haul timber, the fact that the agent at the time owned an interest in the teams and outfit with which plaintiff did the work and rented his interest to him for a certain sum, the agreement being that this should be paid regardless of whether the property should be used or not, did not authorize the defendant to avoid the contract on the ground of fraud. The agreement was not inconsistent with any duties the agent owed the principal, nor did it make him a party in interest with plaintiff in the contract to haul, nor place him in an attitude adverse to his principal.

**4.—Pleading—New Parties—Practice.**

A pleading seeking to make a new party, filed on the day of the trial, came too late.

**5.—Practice.**

A party will not be heard to complain of the action of the court in over-ruling a plea, unless the record shows that same was presented to and was acted on by the court.

**6.—Contract—Evidence—Custom.**

Where the plaintiff and the agent of the defendant who made the contract both testified that it contained no provision requiring the plaintiff to haul the most distant timber first, leaving the nearest to be hauled last, evidence that such a provision was inserted in other contracts and that it was customary in hauling contracts generally, was inadmissible when offered as tending to show it was in the contract in question.

Appeal from the District Court of Liberty County.    Tried below before Hon. L. B. Hightower.

*Stevens & Pickett,* for appellant.—In a trial before a jury, if there is any evidence at all upon an issue, it is the duty of the court to submit the same for the jury's determination, and it is error to take the case from them by a peremptory charge, however slight the testimony might appear to the court.    And even though the testimony of a witness be uncontradicted, yet it is the province of the jury to pass on same, and they may disregard it after considering his manner of testifying, his interest, and all surrounding circumstances and facts connected with the case.    Patton v. Rucker, 29 Texas, 406; McGown v. Railway Co., 85 Texas, 292; Stooksbury v. Swan, 85 Texas, 571; Railway Co. v. Runnels, 92 Texas, 307; Coats v. Elliott, 23 Texas, 613; Turner v. Grobe, 59 S. W., 583.

Where an agent makes a contract upon which his principal is after-wards sued, and the testimony is contradicting as to what were the terms of such contract, it is admissible to show that the same agent, in contracting with other parties for work of exactly the same kind, has made a contract with them containing the terms his principal contends were also a part of the contract being sued upon.    Hollings-worth v. Holshausen, 25 Texas, 635.

Where an agent for his principal makes a contract with another, in which he is individually interested so as to place himself in a position adverse or antagonistic to his principal, such conduct on the part of the agent is a fraud which renders the contract null and void, and the same may be so declared without proof of any further fraud in fact.    Borden v. Houston, 2 Texas, 606; Armstrong v. O'Brien, 83 Texas, 648; Tinsley v. Penniman, 34 S. W., 368; 1 Am. & Eng. Enc. of Law (2d ed.), pp. 1070-6; 1 Clark & Skyles on the Law of Agency, p. 885; id., secs. 404-5, 14-16.

*Marshall & Marshall,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—The appellee, B. A. Stockdale, instituted this suit against the appellant, Dayton Lumber Company,

upon a stated account for $805.80 as a balance due him for hauling logs to appellant's tram railroad, and for the further sum of $337.50 as damages for time lost by appellee through the alleged breach of a contract on the part of appellant to furnish appellee steady work, and for the further sum of $120, the value of time lost by appellee by reason of delays caused by appellant in compelling appellee to move his logging outfit to places distant from the place he engaged to operate. These last two items were not allowed by the court and no further reference need be made to them.

Appellant answered by general denial and pleaded specially that about February 1, 1907, it made a verbal contract with appellee to haul to its spur tracks all timber cut into logs on a certain tract of land, and that for such hauling he was to receive $1.60 per thousand feet, and that by the terms of said contract appellee agreed to haul first the logs on said land situated furthest from the track, leaving those nearest thereto for the last haul, but that appellee, in violation of said contract, hauled first the logs nearest the spur, and then without excuse abandoned the contract and refused to haul the remaining logs on the tract, leaving thereon logs amounting to 276,577 feet, which it was necessary for appellant to have hauled, and that it was forced to pay $2.50 per thousand feet to have this done, thus being required to pay ninety cents per thousand feet more than the cost to it would have been had appellee performed his contract, or an additional cost to appellant of $248.92, which it pleaded in offset to appellee's account. Appellant further pleaded that one W. H. McGregor, its agent who made the contract for hauling with appellee, was its woods and logging superintendent and had complete control and management of the hauling of its timber and of the work done by appellee under said contract, and that after appellee abandoned said work appellant learned that McGregor, at the time of making said contract and while acting as agent for appellant, was jointly interested with appellee in the contract, owning one-half of the teams, wagons, etc., used by appellee in hauling, and that this contract of McGregor was a fraud upon it for which the contract should be cancelled.

Upon the conclusion of the testimony the court peremptorily charged the jury to return a verdict for appellee for $805.80, the amount of the stated account, with six percent per annum interest thereon from November 1, 1907; and in obedience to the instruction such a verdict was returned, and judgment for appellee accordingly entered. The case is now regularly before us on appeal.

By its first assignment of error appellant complains of the action of the court in instructing a verdict for appellee, because, it contends, there was ample evidence to show that appellee had contracted to haul all the timber off a specific tract of land, and having failed to complete the contract, appellant was entitled to an offset in the sum it had been compelled to pay for having the remaining timber hauled over and above the price which it had agreed to pay appellee therefor. The evidence was undisputed that appellant owed appellee for hauling logs a balance of $805.80. It was also undisputed that at the time appellee ceased to haul there remained on the tract 276,577

feet of timber, and that this amount was hauled by W. S. Williams, under a contract with appellant, for which Williams received $2.50 per thousand feet. As to the contract between appellant and Stockdale the testimony is as follows:

Stockdale testified: "The contract I had was as follows: I was to haul logs at so much ($1.60) per thousand feet to their tram road, and was to be paid monthly. I never had any contract to clean up any job at all; I was supposed to haul logs at so much per thousand; my logs were delivered on the tram road and they were scaled, and my account was credited with it. Mr. McGregor scaled the logs; there was no understanding during this time between me and Mr. McGregor, or any persons of the Dayton Lumber Company, that I was to engage in cleaning up any certain amount of ground; I was just merely hired by the company to haul timber at so much per thousand feet. I never had a contract to haul all the timber on tract 5 or 5A. I was to get $1.60 for anything they gave me to haul. I don't know how close some of this timber was to the tract that I hauled on No. 5; I think the timber was about a mile wide, and they run a spur as near the center as they could, and it was about one-half mile on each side; they were to cut the timber and I was to haul it. Some of this timber was right close to the track and I got $1.60 per thousand feet for that, and $1.60 for that farthest from the track; I could haul and quit a month, if I wanted to. I could haul that right by the track and get $1.60 for it and quit. There was no agreement that I was to haul until I had completed all hauling. Mr. McGregor made this contract with me; he was superintendent for the company at that time; he had no interest at all in that contract with me, but he had an interest in the teams I was running. He owned one-half of the teams, and I rented the teams from him at $125 a month; I worked them after he left, but up to that time he was superintendent. My intention was to clean up the spur, but the condition of the ground kept me from it, but I had no contract with the Dayton Lumber Company that I would clean up the spur or any particular tract of land."

McGregor, the logging superintendent of appellant, testified: "In my capacity as agent of the Dayton Lumber Company I entered into a contract with Mr. E. A. Stockdale, with reference to him logging the timber on the company's plant; that contract was, we were to pay him $1.60 per thousand feet to haul logs and deliver them on skids. At the time I made the contract with him he was not to finish any particular part of any particular job; that is, he was not to clean up any ground, and there was nothing said as to that. I left employment of the Dayton Lumber Company the first of November, 1907. I owned one-half interest in the stock that Mr. Stockdale operated then; that is, in the mules. I rented to Mr. Stockdale my interest in the stock at so much per month; he was to pay me $125; I had no interest in the contract that Mr. Stockdale made with the Dayton Lumber Company, and was not a party to it in any way. I also had interest in Foster's teams; that is, the same Foster that was hauling there adjoining Stockdale. I received $125 for my mules and oxen."

L. Fouts, superintendent and manager of appellant, testified: "Mr. McGregor held the position of superintendent of the woods and logging during that time; I do not know anything about the contract he made with Mr. Stockdale, only what he told me; he reported to me he had made a contract with Mr. Stockdale and Mr. Foster to pay them $1.60 per thousand feet for any logs delivered on any spur track we might build. With reference to the work he done in October —he was hauling to what we call spur No. 5A; was to haul practically all of it; I can't say that Mr. McGregor told me that Stockdale was to haul all the timber at $1.60 per thousand feet delivered on the spur. As to what I know about Stockdale having to finish up any particular cut, it is understood that a man has to finish up his cut before he leaves it, but I do not know what contract McGregor made with Stockdale about that, only what McGregor reported to me; I do not know that McGregor did make such report to me, that is, that Stockdale was to finish up any particular cut; well, I don't think McGregor did report to me on the contract he made with Stockdale."

The only evidence in the record claimed by appellant to be contradictory of the testimony above set out is that of the witness Williams, to whom McGregor and Stockdale sold the teams and logging outfit, to the effect that at the time of his purchase Stockdale said that it was understood that he, Stockdale, was to clean up the rest of spur No. 5; and the testimony of appellee that he was notified by appellant after he quit hauling on December 9 to complete the hauling on the tract or he would be charged up with the cost; that he was not ready to begin work on the date he was notified, as it was impossible for him to have done the work with the mules, and the reason he did not go to work then was because the ground was in such condition he could not do anything with the mules; that he had tried it a few days in November and also a few days in December and crippled several of his mules and he thought he would wait until the ground dried, and that he had intended to haul all the logs on the tract; that he would have done so, but it was impossible to get his mules in the woods, but that he did not have any contract to "clean up the job."

The most that can be said of the evidence relied upon by appellant as raising the issue of a contract on the part of appellee to haul at the contract price all the logs on the specific tract, is that it raises only a surmise or suspicion of the existence of facts sought to be established in support of the offset pleaded by appellant, but its probative force is so weak that in legal contemplation it falls short of being "any evidence" from which the jury could reasonably infer the existence of the alleged fact; and that the court did not, therefore, err in instructing a verdict for appellee. (Joske v. Irvine, 91 Texas, 574; Wills v. Central Ice Co., 39 Texas Civ. App., 483; Murphy v. Galveston, H. & N. Ry. Co., 96 S. W., 941.) The assignment is overruled.

By its third and fourth assignments appellant contends that the action of the court in instructing a verdict for appellee was erroneous for the further reason that the testimony proved that McGregor, ap-

pellant's agent, was individually interested in the contract made by him as such agent with Stockdale, and that his interest was of such nature as to amount to a fraud on his principal and to render the contract void. Without discussing the principle involved in the proposition, the assignment is overruled on the ground that there is not sufficient evidence in the record to raise the issue. Both Stockdale and McGregor testified positively that the latter had no individual interest whatever in the contract. The testimony relied upon by appellant to sustain its contention is, that prior to the making of the contract McGregor owned a half interest in the teams and logging outfit with which Stockdale did the work, and McGregor rented to Stockdale his part of the property for the consideration of $125 per month, the agreement being that Stockdale should pay him said sum regardless of whether the property should be used or not. This agreement was not inconsistent with any duties McGregor owed to his principal, nor did it make him a party in interest with Stockdale in the contract, or place him in an adverse or antagonistic attitude toward his principal.

The fifth assignment, which complains that the court erred in overruling appellant's motion to make McGregor a party, is overruled. The pleading by which he was sought to be made a party not having been filed until the day of the trial, came too late. Besides this, there is nothing in the record to show that the plea was presented to the court or was overruled.

The defendant offered to prove by McGregor that in making contracts with Rice and Harrell for hauling logs it was stipulated that the logs furthest away from the tracks should be hauled first, leaving those nearest the track to be hauled last, and also offered to prove by the witness Fouts, the appellant's general manager, that it was customary to insert such stipulations in hauling contracts generally. An objection to the introduction of this evidence was sustained. The evidence was sought to be introduced as a circumstance to prove that such a stipulation was also embraced in the contract with appellee Stockdale. It was the positive evidence of both Stockdale and appellant's agent, McGregor, who made the contract with him, that the contract contained no such provision; and the proof being uncontradicted on this point, testimony as to what stipulations it was customary to insert was not admissible for the purpose for which such evidence was offered. And if this was not so, and had the testimony been admitted, we do not think the evidence, together with other circumstances admitted, would have been sufficient to raise the issue that Stockdale's contract contained such a provision. The assignments raising the point are overruled.

There being no reversible error in the record the judgment of the court below is affirmed.

*Affirmed.*