**HARRIS COUNTY HOUSTON SHIP CHANNEL NAV. DIST. v. WILLIAMS.**

No. 10130.

Court of Civil Appeals of Texas.
Galveston.

Nov. 1, 1935.

Rehearing Denied Nov. 21, 1935.

H. F. Montgomery, Geo. D. Sears, Geo. C. Gaines, Jr., and D. A. Simmons, all of Houston, for appellant.

Fulbright, Crooker & Freeman and Baker, Botts, Andrews & Wharton, all of Houston, for appellee.

GRAVES, Justice.

As tried out below, the suit was by the appellee against the Greater Houston Improvement Company, a corporation, to recover the alleged unpaid balance due on fourteen vendor's lien notes executed by the improvement company to Mrs. Rosa C. Allen on June 27th of 1927, as the deferred part of the purchase price for 1388.44 acres of land in the William Vince and Callahan & Vince surveys in Harris county conveyed by her to it on that date, and to foreclose vendor's and deed of trust liens contemporaneously retained to secure the payment of the notes on 973.93 acres of the 1388.44 acres claimed to be still unreleased; she also named as a party defendant appellant, Harris County Houston Ship Channel Navigation District, a public corporation, a purchaser on the same date with the notes sued on of 484.69 acres of the land from the improvement company, seeking only as against the navigation district a foreclosure of her claimed two liens against the 484.69 acres that so went to it.

The cause was submitted to a jury upon five special issues, two of which were unanswered because that was rendered unnecessary, the remaining three, with the answers thereto, being as follows:

"No. 1: Do you find from a preponderance of the evidence that Robert C. Stuart was authorized by Mrs. Rosa C. Allen to represent her in effecting the sale to the Greater Houston Improvement Company of the 1388.44 acres of land at the price and upon the terms in the contract dated May 3, 1927?

"He was so authorized.

"No. 3: Do you find from a preponderance of the evidence that Robert C. Stuart was authorized by Mrs. Rosa C. Allen to represent her in matters pertaining to the sale to the Greater Houston Improvement Company of the 1388.44 acres of land from the date of the contract between Mrs. Rosa C. Allen and the Greater Houston Improvement Company through the final closing of the sale on or about June 27, 1927?

"He was so authorized.

"No. 5: Do you find from a preponderance of the evidence that Robert C. Stuart was authorized by Mrs. Rosa C. Allen to represent her in negotiations with Thos. H. Ball, president of the Greater Houston Improvement Company on or about December 27, 1927, with respect to making an anticipated collection of Forty-six Thousand Dollars and One Hundred Thousand Dollars, evidenced by checks executed by the Greater Houston Improvement Company, payable to the order of Mrs. Rosa C. Allen, given to Robert C. Stuart on that date but dated December 27, 1927, and January 2, 1928, respectively?

"He was so authorized."

Upon this verdict and its own findings on the facts in evidence, the court rendered judgment in appellee's favor against the improvement company for the balance found to be due upon the fourteen notes, and against both it and the appellant for the foreclosure of the appellee's claimed liens on both the 489.44 acres retained by the improvement company and on the 484.69 acres so conveyed by it to the appellant, ordering that retained by the improvement company to be first sold in satisfaction of the judgment, together with a further decree that the appellant, on a cross-action it had filed against the improvement company for the total purchase price between them on the 484.69 acres so conveyed by the one to the other, recover of the improvement company a money judgment in the sum of $303,405.41.

This court reverses the action of the learned trial court and renders in appellant's favor the appellee's cause of action against it for foreclosure, upon the holding that it is entitled to have and to hold the land so deeded to it by the improvement company free from the appellee's liens, at the same time vacating the appellant's money recovery against the improvement company, since it only prayed for that relief as an alternative, that is, in the event the appellee was given the foreclosure she sought as against it and the 484.69 acres it held, the rendition here of that part of the judgment the other way automatically wiping out any such liability; in support of such conclusions, these findings of fact and law are stated:

■ (1) Since the quoted findings of the jury are not attacked as being without support in the evidence by either side, they stand on the appeal as established facts; not only so, but the uncontroverted evidence conclusively shows that a like finding should be stated as to the relation toward this whole transaction between the improvement company and Thomas H. Ball, that is, that in all negotiations leading

up to the contract of purchase and sale of the whole tract between Mrs. Allen and the improvement company of May 3, 1927, as well as in all subsequent transactions material to this litigation, the improvement company was represented solely by Mr. Ball, its president; indeed, Mr. Ball was that company, it being merely his alter ego, since he not only owned or controlled all of its stock, but actually conducted its affairs and exercised its corporate powers as if they were those of himself individually, as is illustrated upon the face of the purported contract of April 28th of 1927 with Robert C. Stuart, whereby he, being the sole signer thereof, and that only in his individual name, undertook to make a fifty-fifty arrangement with Stuart, not only for the disposition of the land to be acquired by his corporation from Mrs. Allen, but also to divide the ownership of that corporation itself between them.

(2) Whether or not the alleged contract between Ball and Stuart, just referred to, was a valid and binding one between them, which, to say the least, is doubtful, neither in it nor aliunde is there any evidence that at any of the times, or in any of the transactions wherein Stuart was found by the jury's quoted answers to have been her authorized agent, he had any such adverse or incompatible personal interest with that of Mrs. Allen as either destroyed his agency for her, or rendered it reasonably probable that any other ordinary person in his shoes would not have acted in her behalf upon the knowledge he acquired while so acting with her authority.

(3) Capt. Crotty had first taken up and initiated through Stuart the negotiations with Mrs. Allen for the purchase of about 500 acres out of her tract that the navigation district desired, under authorization given him for that purpose by the district's board of directors in January of 1927; Mr. Ball had no part in these negotiations until after Capt. Crotty had told him Mrs. Allen would not sell the 500 acres the district wanted, unless the entire tract was purchased; afterwards, that is, in April of 1927, Ball saw Stuart about the matter, and after some negotiations touching it between them, about the middle of that month he borrowed $5,000 personally and deposited it with Mr. Stuart for Mrs. Allen as earnest money on the purchase of her entire tract in behalf of his corporation, this action having been taken some two weeks prior to the purported contract between Ball and Stuart, referred to in preceding paragraph

1 hereof; as the dénouement of that action, the contract of purchase of the entire tract of May 3d of 1927 was executed, followed by the delivery of the deed pursuant thereto on the 27th of the same month; on June 9th of 1927 the district's board of directors passed a resolution to the effect that the 484.69 acres desired by the district "be acquired by general warranty deed, the title thereto to be approved by counsel, and upon delivery of such conveyance to the Navigation District, that voucher or vouchers issue in payment therefor"; acting under this authority, Mr. Ball did approve the title to that tract (using for that purpose two opinions of his law partners, Mr. Grinstead and Mr. Merrill), no mention, however, having been made either by himself or in those opinions of the lien to be reserved in the deed for her entire land from Mrs. Allen to Mr. Ball's improvement company.

The record discloses no other matter connected with the acquisition by the navigation district of its 484.69 acres in which Mr. Ball acted as its agent, except in the single particular of his having thus approved the title thereto as he was authorized to do by the quoted recitation from the resolution passed by the district's board of directors, but does conclusively show that in all other matters and transactions connected either with the sale of the whole tract by Mrs. Allen or with the acquisition by the navigation district of its part thereof, that he acted for and in behalf of the improvement company he so controlled.

(4) As between Messrs. Ball and Stuart, acting in the several capacities stated supra, the respective deeds from Mrs. Allen of the whole tract to the improvement company, and in turn from the latter to the navigation district of its portion thereof, constituted merely parts of one and the same transaction that had been in advance so agreed upon and were then so contemporaneously carried out between them, the $60,000 cash payment made by the district in the name of the improvement company being the same as that Mrs. Allen acknowledged as having been received by her from the improvement company; thereafter, before the close of that current year, the Navigation District paid in full to the improvement company, with Mr. Stuart's knowledge and consent, the total indebtedness reserved against it in the improvement company's deed to it for the 484.69 acres, $146,000 of which was in turn at once paid to Mr. Stuart for Mrs. Allen as a credit

upon the indebtedness she had so reserved against the whole land in her deed to the improvement company, Mr. Stuart at that time being fully informed of the source of such payment and the purpose of the navigation district in making it to clear its tract of the vendor's lien it had given against the same; the improvement company accordingly released its lien to the navigation district on the receipt of that payment, but no release was then requested by anybody from Mrs. Allen of her theretofore overriding lien, nor was any then or thereafter given by her.

(5) By the deed of date July 5th of 1927 the improvement company also conveyed the 414.40 acres out of the Allen 1388.44 acres to Mr. Sieber for $203,477.50, of which $20,000 was in cash and the balance in vendor's lien notes; thereafter, on December 27th of 1929, Mrs. Allen fully released all her liens in so far as they affected this Sieber 414.40 acres; the navigation district was the first purchaser under the improvement company of any land out of the Allen 1388.44 acres, it being shown without doubt or confusion in the facts that its right to the tract it bought became vested through its contract and deed, described supra, prior to the vesting of any right or title in Mr. Sieber, who was the next purchaser to it in point of time, his contract for his tract with the improvement company that was made prior to such vesting of the navigation district's title having been no more than an option upon his part that was never exercised until after the honor of being such purchaser had already vested in the navigation district.

(5a) The evidence shows that nothing was ever done under the purported contract between Stuart and Ball; further, Stuart did not sign it, nor is there anything in the record to show that he ever accepted it, or any benefits thereunder, or ever regarded it as vesting in him any enforceable rights; furthermore, as its context makes plain, it had to do only with subsequent handling, ownership, and development of the property after Mrs. Allen's disposition of it had been completed; in other words, she had already made disposition of all her interests of substance therein by having set her own price and terms for the whole of the land and embodied in the deed, notes, and deed of trust the only conditions upon which her interest therein might pass; it further appears that the bargain between Mrs. Allen and the improvement company had already been made several days before the making of this Stuart-Ball contract, and there is not a scintilla of evidence in this record tending to show that Stuart ever, at any of the times, or in any of the matters wherein the jury found he was acting under full authority from Mrs. Allen, did any act adverse to or incompatible with her interest as so intrusted to his care; upon the contrary, the proof is compelling to the effect that all through those transactions he punctiliously cared for her every interest—up to and inclusive of the acceptance for her of the $146,000 paid by the navigation district at the close of 1927 for her benefit as and for the total of the deferred purchase money due from it for the land it got by his splitting that payment up into two portions so that her income tax for one or the other of the two years succeeding each other at that time would not show too much.

(6) On the other hand, Mr. Ball's status toward the navigation district in all the same transactions was fixed by these ultimate facts, that stand out from the undisputed evidence; as indicated, he first came into the matter when Capt. Crotty for the district (accompanied by Stuart's two real estate agents, who were aiding him in efforts to sell all or part of the Allen land to Crotty for the district) took it up with Mr. Ball after an impasse had developed between himself and Stuart, in that the district would buy only about 500 acres of the tract, whereas Stuart for Mrs. Allen would not sell less than the whole of it; Mr. Ball, with the express understanding and agreement of all those confreres to that effect, thereupon, acting wholly for himself personally, undertook to work out a deal whereby "he and his associates would take the entire tract and let the Navigation District have the part it wanted"; Mr. Ball succeeded in that undertaking and the two sales here involved (Mrs. Allen's to the improvement company and the latter's to the appellant, as reflected in all the instruments evidentiary thereof), together with the aftermath thereof as shown in the jury's quoted findings simply constituted the consummation of that individual plan of his, which Mr. Stuart for Mrs. Allen made possible by his complete co-operation therewith from beginning to end, that being, in all the attending circumstances, the upshot of affirmative answers to the specific questions asked; as the minutes of the district's board meeting of June 9th of 1927 also show, Mr. Ball had first reported to them

that his company was buying the whole tract from Mrs. Allen, notwithstanding her price had been increased by $25 per acre, and would sell the navigation district the tract it desired at $450 per acre, $60,000 in cash, the balance payable over a period of ten years, whereupon the board, at the same meeting, authorized that purchase, as set out in the quotation from its minutes appearing above; his action in then approving the title has likewise already been stated; it thus indisputably appears that he never acted in appellant's behalf with respect to its purchase of the 484.69 acres, except as attorney in so approving the title, having immediately, on first being called into the matter by Capt. Crotty, assumed in all other respects the role of a seller of the land to the district that never thereafter changed.

From the facts recited, as affecting Messrs. Stuart and Ball, there follows these conclusions:

■ (1) As concerns Mr. Stuart, having been so shown to be Mrs. Allen's fully authorized agent at all times and in all the transactions with which this litigation has to do, and having as such had full knowledge of all the rights and equities accruing to the navigation district from the transactions he carried on in her behalf as affecting it, and there being at no time therein any such adverse or inconsistent interest in himself to her as destroyed or nullified his agency for her in those transactions, Mrs. Allen was in law chargeable with notice of all such rights and equities as inured to the benefit of the navigation district therefrom. Irvine v. Grady, 85 Tex. 120, 19 S.W. 1028; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Goldstein v. Union National Bank, 109 Tex. 555, 213 S.W. 584; Dayton Lumber Co. v. Stockdale, 54 Tex.Civ.App. 611, 118 S.W. 805; American Law Institute, Restatement of the Law of Agency, vol. 1, § 282.

■ As concerns Mr. Ball, on the other hand, it having likewise conclusively appeared that he was never the navigation district's authorized agent, except in the single particular of being so deputized by it to examine and approve the title to the 484.69 acres it purchased, having been in all other respects and transactions the agent, representative, and in fact the alter ego of the improvement company, his having approved the title from Mrs. Allen both to himself through his corporation, which was the seller thereof, and to the navigation district, which was the buyer, of the 484.69 acres it bought, the written opinions thereon having approved the title in Mrs. Allen, not in the improvement company, and he not having mentioned to nor informed the navigation district of Mrs. Allen's overriding lien on the tract it was getting, and none of its directors, not even Capt. Crotty himself, who had from the beginning been active in the transaction, having known of the continuing existence of such lien, his personal interest was clearly so adverse to that of the navigation district as to destroy his agency in its behalf, rendering it reasonably improbable that any ordinary person in his position under such circumstances would have acted in behalf of his principal upon what he knew or would have disclosed that knowledge to it. Citizens' National Bank v. Good Roads Gravel Co. (Tex.Civ.App.) 236 S.W. 153; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Schneider v. Sellers, 98 Tex. 380, 84 S.W. 417; Harrington v. McFarland, 1 Tex.Civ. App. 289, 21 S.W. 116; Texas Pacific Coal & Oil Co. v. Belcher (Tex.Civ.App.) 265 S.W. 1081.

■ (2) Mrs. Allen, as the mortgagee, thus knowing that the mortgagor, improvement company, had sold this 484.69 acres of the mortgaged land to the navigation district, which did not assume her mortgage, but did pay full value for what it was to get, and having in the same manner (that is, through her authorized agent, Stuart, whose knowledge in the matter was that of herself), accepted that payment, likewise with full knowledge of its source and purpose, was thereby estopped to thereafter assert her lien against that much of the land in the navigation district's hands. Pratt v. Waterhouse, 158 Pa. 45, 27 A. 855; Field v. Doyon, 64 Wis. 560, 25 N.W. 653.

■ (3) The navigation district, being the first purchaser of a portion of the land conveyed by Mrs. Allen to the improvement company, was entitled to have all payments made by the improvement company to Mrs. Allen on the principal of the mortgage debt applied to the release of its land in accordance with the inverse order of alienation rule, notwithstanding the release provisions of the deed and of the deed of trust, and, Mrs. Allen being at all material times, through Stuart's agency for her, chargeable with notice of the rights and equities of the navigation district, the navigation

district is now entitled to have such payments so applied to the partial release of its land, inclusive of the payment by Mr. Sieber, as recited in finding No. 5 supra. Burson v. Blackley, 67 Tex. 5, 2 S.W. 668; Vansickle v. Watson, 103 Tex. 37, 123 S.W. 112; Rippetoe v. Dwyer, 49 Tex. 498; Miller v. Rogers, 49 Tex. 398; Elmendorf v. Beirne, 4 Tex.Civ.App. 188, 23 S.W. 315; Continental Oil Co. v. Graham (Tex.Civ. App.) 8 S.W.(2d) 719; Lattimore v. Provine, 29 Tex.Civ.App. 111, 69 S.W. 222; First State Bank of Teague v. Cox (Tex. Civ.App.) 139 S.W. 1; Wiggins v. Wagley (Tex.Civ.App.) 190 S.W. 736; Wood v. O'Hanlon, 50 Tex.Civ.App. 642, 111 S.W. 178.

(4) The release clauses in the deed from and the deed of trust to Mrs. Allen, in the circumstances obtaining, did constitute a covenant running with the land, and all the rights of the improvement company affecting the 484.69 acres conveyed by it to the navigation district vested in and may be enforced by the latter; this rule applies and governs the case at bar, notwithstanding any contrary subsequent agreements that may have been made between Mrs. Allen's agents, Stuart and Crooker, and the improvement company, after the conveyance from the improvement company to the navigation district had taken effect; all the authorities are not uniform upon this question, the great weight, however including that of Texas, supports the rule as here stated. 93 A.L.R. at pages 1027 to 1041; Jones on Mortgages (7thEd.) par. 79; Vawter v. Crafts, 41 Minn. 14, 42 N.W. 483; Gammel v. Goode, 103 Iowa, 301, 72 N.W. 531; Chrisman v. Hay (C.C.) 43 F. 552; Kerschensteiner v. Northern Michigan Land Co., 244 Mich. 403, 221 N.W. 322; Rosenberg v. General Realty Service, 231 App.Div. 259, 247 N.Y.S. 461; Wildermuth v. Albodan Realty Corporation, 140 Misc. 83, 250 N.Y.S. 41; Bailey v. Inman, 105 Fla. 1, 140 So. 783; Wolf v. Oldenburg, 154 Md. 353, 140 A. 494; Sacramento Suburban Fruit Lands Co. v. Whaley, 50 Cal.App. 125, 194 P. 1054; Lane v. Allen, 162 Ill. 426, 44 N.E. 831; Ventnor Inv. & Realty Co. v. Record Development Co., 79 N.J.Eq. 103, 80 A. 952; Dimeo v. Ellenstein, 106 N.J.Eq. 298, 150 A. 675; Hagaman v. Frederick, 109 N.J.Eq. 288, 157 A. 86; Torrey v. Blair, 108 N.J.Eq. 82, 154 A. 4; Gulf, C. & S. F. Ry. Co. v. Smith, 72 Tex. 122, 9 S.W. 865, 2 L.R.A. 281; Beckham v. Ward County Irr. Dist. No. 1 (Tex. Civ.App.) 278 S.W. 316; Cunningham v. Buel (Tex.Civ.App.) 287 S.W. 683; Hooper v. Lottman (Tex.Civ.App.) 171 S.W. 270; Curlee v. Walker, 112 Tex. 40, 244 S. W. 497; Reeves v. Pecos County Water Imp. Dist. No. 1 (Tex.Com.App.) 7 S.W. (2d) 67; Gulf Refining Co. v. Dishroon (Tex.Civ.App.) 13 S.W.(2d) 230; Guardian Loan & Trustee Co. v. Schunke (Tex. Civ.App.) 36 S.W.(2d) 585.

(5) Obviously the confluence of all the several rights, equities, and credits herein held to have inured to appellant's benefit as against the appellee entitled it to the complete release of its 484.69 acres from Mrs. Allen's claimed liens, without the necessity of its being here determined what component part each of them contributed to that result; while it is true, as the appellee so ably contends, that Mrs. Allen's liens could not be impaired by the subsequent purely inter sese acts of her mortgagor and its vendee, that is, while the improvement company and the navigation district could between themselves have done nothing without her participation to take from her any of the rights her mortgage gave her, she herself did have such power, and it seems clear that she exercised it by accepting the navigation district's funds in the circumstances already set out.

(6) The appellant's claim that its purchase of the land was ultra vires the corporation, in that it was a public entity with its privileges and authority limited by law, was not pleaded below, nor was the trial there conducted upon that theory, rather upon the basis of its being a valid transaction. Moreover, it has sought to rescind the transaction and recover back the funds as having been unlawfully paid. In such circumstances, it is thought the claim of ultra vires so presented for the first time on the appeal is abortive.

Further discussion being deemed unnecessary, judgment has been ordered as indicated.

**Reversed and rendered.**