$$\frac{67}{80} \quad \frac{5}{343}$$
$$\frac{67}{88} \quad \frac{5}{182}$$

## No. 2090.

## Z. L. BURSON v. G. I. BLACKLEY ET AL.

1. RESCISSION OF EXECUTORY CONTRACTS.—A vendor has his election, either to rescind an executory contract for the sale of land when the vendee makes default in payment, or, to subject the land to sale to satisfy the debt; but if he elects to rescind, it must be rescission of the entire contract.

2. SAME.—If he elects not to rescind the contract, but to enforce it, the vendor is regarded as a creditor holding the superior title, and he occupies with reference to the land the same position that a mortgagee does in those States in which it is held that the legal title passes by a mortgage.

3. RELEASE OF VENDOR'S LIEN—REPURCHASE.—A vendor who has conveyed land by a deed, retaining a lien to secure the purchase money,

who takes a reconveyance of a part of the land from his vendee in part payment of purchase money, and who subsequently conveys the part thus reconveyed to him to a third party, can not enforce the lien on the residue of the land against a purchaser from his vendee, if such purchaser has paid in part for it and executed negotiable notes for the balance of the purchase money, when the part so reconveyed is of value equal to or greater than the sum due on the notes held by the original vendor for purchase money. The fact of the sale by his vendee and of the equities growing out of such sale being known to him, he thereby, by procuring such reconveyance, defeats his right to have all the land subjected to sale for the payment of the entire sum remaining due.

4. SAME—RELEASE, ITS EFFECT.—The release of one parcel or share of land from a vendor's lien in an executory contract which originally covered all other parcels or shares, would release all from the proportionate amount of their respective original liabilities which the value of the amount released bears to the total value of all. One owner being released, all the rest are entitled to the same pro rata abatement. When the equities of the various owners are unequal, so that their respective parcels are liable in the inverse order of alienation, if the vendor, having notice of the facts, releases a parcel which is primarily liable, he thereby discharges or releases all the parcels which are subsequently liable, in the order of their several liabilities, from an amount of the lien debt equal to the value of the parcel released. If the value of the parcels released equals the lien debt, then all the subsequent parcels are wholly relieved from liability; if the value is less than the original lien debt, the subsequent parcels can at most be liable in their order only for the excess of the debt over such value.

APPEAL from Hunt. Tried below before the Hon. J. A. B. Putnam.

*Herndon, Cain & Garrison,* for appellant : On their proposition that the deed from appellant to Blackley, conveying four hundred and eleven acres of land for two thousand dollars, retained the vendor's lien upon said land until the purchase money was paid, and appellant has the superior right to the land against his vendee Blackley, and those in privity with him, as long as the purchase money remains unpaid. The title did not vest and has not vested in Blackley nor his vendee Mayo, the latter two having only an equitable title against appellant; Mayo, having purchased from Blackley, is bound by the recitals in the deed through which Blackley claims, and had notice of the equities of appellant against Blackley, and the failure of Blackley to record his deed or exhibit it to Mayo before his sale to Mayo does not affect the right of appellant, as Mayo was bound by the recitals in title deed through which he claimed, whether the same was recorded or not, cited Peters v. Clements, 46 Texas, 114 et seq.; Foster

v. Powers, 64 Texas, 247; Dunlap v. Wright, 11 Texas, 597; McAlpin v. Bennett, 21 Texas, 535; Baker v. Ramey, 27 Texas, 52; Darst v. Trammel, 27 Texas, 129; Monroe v. Buchanan, 27 Texas, 241.

On their proposition that the Mayos had neither title to the one hundred acres of land, nor an incumbrance upon it as against appellant, the original vendor; that his conveyance being an executory contract, and the title remaining in him till the purchase money was paid, the appellees Mayos were not necessary parties to this suit, but being made parties by appellant, they had the right to tender appellant in the foreclosure suit the amount of the unpaid purchase money and demand title; failing to do this, they are estopped from resisting the foreclosure of the vendor's lien for the one hundred acres of land in their possession, they cited Ufford v. Wells et al., 52 Texas, 612; Foster v. Powell, 64 Texas, 247; and cases cited; Hobby's Land Law, sec. 240; Whitehead v. Fisher et al., 64 Texas, 638; Ransom v. Brown, decided at the Austin term, 1885.

*E. B. Lewis*, also for appellant: On the proposition that a subvendee of land with an expressed vendor's lien reserved against it, in favor of former vendor, or even with an implied lien, can not have it released from said lien, where he shows that he himself has not paid the purchase price he was to pay, and to protect himself he must do equity and redeem by payment of at least the amount still owing by him. (Ufford v. Wells et al., 52 Texas, 612; Tom and wife v. Wollhoefer, 61 Texas, 277; Estes v. Browning, 11 Texas, 237; Allen v. Clark, 17 Pick., 47.)

*Gilbert, Perkins & Gilbert*, on their proposition that parties dealing with a vendee who has acquired land by an executory contract, can not be deprived of any interest they may acquire in such land, by the vendor exercising his right of rescission, unless he does so clearly and unequivocally, at a proper time and under circumstances which entitle him to declare the sale canceled, cited Tom v. Wollhoefer, 61 Texas, 279.

On their proposition that where equities in favor of a subsequent vendee or mortgagee of the purchaser of such land have intervened, of which the original vendor has notice, a rescission can not be had without saving the rights of such vendee or mortgagee, they cited 3 Pomeroy's Equity Jurisprudence, section 1226; Guion v. Knapp, 6 Paige Chancery, 35; 1 Jones on Mortgages, section 722.

Where a vendor, in an executory contract for the sale of land, treats the contract as still subsisting, or does any act which may be construed into its affirmance, he will thereafter be considered as a simple lien holder, and the bringing of a suit to foreclose the lien will be construed as an affirmance of the contract; citing Tom v. Wollhoefer, 61 Texas, 277; Coddington v. Wells, 57 Texas, 49.

Where a holder of a lien on land releases or takes a conveyance to a portion thereof, which in a foreclosure suit would be primarily liable for the discharge of such lien, he thereby discharges the remainder of the land from liability on such lien to an amount equal to the value of the land so released or conveyed to him; citing 1 Jones on Mortgages, section 722; 3 Pomeroy's Equity Jurisprudence, section 1226.

STAYTON, ASSOCIATE JUSTICE. G. I. Blackley, claiming to be the agent of the appellant Burson, contracted verbally to sell to W. J. and G. W. Mayo one hundred acres of land, and received thereon a part of the price agreed upon.

The evidence bearing on the question of agency is conflicting.

Burson, at that time, was the owner of an undivided one-half interest in the tract of land of which that in controversy is a part, and, soon after the verbal contract was made between Blackley and the Mayos, he conveyed to Blackley his entire interest in the larger tract, which contained eight hundred and twenty-two acres.

This conveyance was made in consideration of two thousand dollars, for which Blackley executed to Burson two notes, each for one thousand dollars, bearing interest from date, and the deed to Blackley expressly retained a lien to secure the purchase money.

Soon after Burson made the deed to Blackley, the latter made a deed to the Mayos for the hundred acres which, as the agent of Burson, he had verbally agreed to sell to them. This deed was made in consideration of a cash payment of two hundred and twelve dollars and fifty cents, and the further sum of three hundred and twenty-two dollars, secured by two promissory notes executed by Mayos to Blackley, one for one hundred and fifty dollars, due October 1, 1881, and the other for one hundred and seventy-two dollars, due November 1, 1881, both bearing interest from date. The deed from Blackley also reserved a lien.

These notes seem to have been negotiable, and the larger one seems to have gone into the hands of an innocent holder.

After the deed was made by Blackley to the Mayos, with a full knowledge of all the facts existing, the two notes executed by Blackley to Burson being unpaid, Burson received from Blackley a reconveyance of all the land which he had conveyed to him except the one hundred acres which Blackley had conveyed by metes and bounds to the Mayos.

Burson claims that the reconveyance of the land, less the hundred acres, was made in consideration of a credit of fifteen hundred dollars on the notes executed to him by Blackley, and this action was brought to recover the balance claimed to be due on one of these notes, and to foreclose the lien on the one hundred acres sold to the Mayos.

The Mayos claim that the interest in the land reconveyed by Blackley to Burson, the note executed by the Mayos to Blackley for one hundred and fifty dollars, and the promise of Blackly to pay to Burson one hundred and fifty dollars, were received in full satisfaction of the two notes executed by Blackley to Burson.

The views of the respective parties in this respect are supported by evidence directly conflicting.

After the reconveyance by Blackley to Burson, the latter conveyed to Whatley all of his interest in the entire eight hundred and twenty-two acres, except the one hundred acres conveyed by Blackley to the Mayos, and Whatley seems to have acquired his interest of the other co-tenant.

No question arises in the case as to right of Burson or Blackley to sell the hundred acres in controversy as a specific part of the land in which another co-tenant was interested.

The defendants alleged that they were innocent purchasers, in ignorance of the lien held by Burson; but the recitals in the deed from Burson to their vendor gave them notice of the existence of the lien.

There were several other defenses set up, none of which, except one, is it necessary to state, in view of the questions raised by the assignments of error.

The defendants Mayo alleged the reconveyance by Blackley to Burson, and the subsequent conveyance by Burson to Whatley, and that the interest in the eight hundred and twenty-two acres of land which passed thereby, at the time the reconveyance to Burson was made, was of value largely in excess of the sum due on the two notes then held by Burson and executed by Blackley.

The court below instructed the jury in effect that, if they found

this to be true, and further found that Burson received the recon-
veyance from Blackley with a full knowledge of the transactions
between Blackley and the Mayos, then they would find for these
defendants.

., The assignments of error which raised this question are:

" The court erred in refusing to give the first paragraph of the
charges asked by plaintiff, which is as as follows:

' You are instructed that, if you believe from the evidence that
G. I. Blackley bought an undivided interest of four hundred and
eleven acres of land in the Daniel Slack survey of eight hundred
and twenty-two acres from plaintiff, and gave his notes for the
same, and afterwards sold the hundred acres as alleged to defend-
ants G. W. and W. J. Mayo, and at the time he made the trade
with defendants he was not the agent of plaintiff, and that plaintiff
has never received any part of the foreclosure money except the
fifteen hundred dollars mentioned in the deed from G. I. Blackley
to him conveying the eight hundred and eleven acres, then you
will find that the hundred acres bought by defendants Mayo is
subject to plaintiff's lien.'

" The court erred in overruling plaintiff's general demurrer to
defendants G. W. and W. J. Mayo's amended answer in this: In
their special plea they allege that the three hundred and eleven
acres reconveyed by defendant Blackley to plaintiff was at the
date of the deed, to wit, the twenty-sixth day of February, 1883,.
worth three thousand five hundred dollars, which was more than
the amount due upon the two one thousand dollar notes, and in
said plea they charge no unfairness or fraud on the part of defend-
ant Blackley and plaintiff in said reconveyance, or any purpose
to injure defendants G. W. and W. J. Mayo.

" The court erred in refusing a new trial because of the follow-
ing error in the charge of the court complained of in the first
ground of plaintiff's amended motion, to wit:

' That plaintiff was entitled to have his lien foreclosed on the
hundred acres of land in controversy, unless the market value of
the three hundred and eleven acres of the land reconveyed by
Blackley to plaintiff was at the time of said conveyance, or be-
tween such date and subsequent sale by plaintiff, sufficient to pay
off and satisfy said two one thousand dollar notes, with interest
accrued thereon.' ".

The answer presents defenses which are not and could not suc-
cessfully be questioned, and if there was one defective plea, this
would not have authorized the court to sustain a general demurrer.

The assignments stated really present but one question, which is:  Can a vendor, who has conveyed land by a deed retaining a lien to secure the purchase money, take a reconveyance of a part of the land from his vendee in part payment of the purchase money, and subsequently convey the part reconveyed to him to a third person, and still enforce the lien on the residue of the land against a person to whom his vendee has sold it, if such person has in part paid for it and executed negotiable notes for the balance of the purchase money, when the part so. reconveyed was of value equal to or greater than the sum due on the notes held by the vendor for purchase money?  The fact of the sale by his vendee, and of the equities growing out of that, being known to him at the time, he defeats his own right to have all the lands subjected to sale for payment of the entire sum due him.

The right of a vendor, who has made an executory contract to convey land, to rescind it on failure of the vendees to pay the purchase money, has been recognized in this State in many cases.

Rescission is one of the remedies such a vendor may have to relieve himself from further obligation under the executory contract.  He may, however, waive such right, and have the land · subjected to sale for the payment of the purchase money.

On rescission of the contract to sell, the vendor acquires no higher degree of title than he had before, but is simply relieved from the obligation of the executory contract.

There can be no partial rescission of an entire contract; there must be a total rescission or none at all.

If the vendor in an executory contract to sell land elects not to rescind the contract, but to enforce it, he is to be deemed a creditor holding the superior lien on the thing which is the subject matter of the executory contract—in effect, he stands as a mortgagee is held to stand in those States in which it is held that the legal title passes by a mortgage.

This being true, his rights and duties, as to persons, who, through the vendee, have acquired equitable rights, must be determined by the same rules as would determine the rights and duties of such a mortgagee towards a vendor or other person acquiring equities from or through a mortgagor.

"Although the equities between the subsequent owners of various parcels of the mortgaged premises, whether equal or unequal, do not prevent the mortgagee from enforcing the mortgage, if necessary, against all these parcels, yet, after the mort-

gagee has received notice of the subsequent conveyances, the equities affect him to such an extent that he can not deal with the whole premises, or with any parcel thereof, or with the owner of any parcel, by release or agreement, so as to disturb the equities subsisting among the various owners, or to destroy their rights of precedence in the order of liability, or to defeat their rights of ratable contribution, or of complete or partial exoneration."

"The release of one parcel or share would release all the other parcels from the same proportionate amount of their respective original liabilities which the value of the part released bears to the total value of the mortgaged premises; one owner being released, all the others are entitled to a pro rata abatement. When the equities of the various owners are unequal, so that their respective parcels are liable in the inverse order of alienation, if the mortgagee, having notice of this situation, releases a parcel which is primarily liable, he thereby discharges or releases all those parcels which are subsequently liable, *in the order of their several liabilities*, from an amount of the mortgage debt equal to the value of the parcel released. If the value of the parcel released equals the mortgage debt, then all the subsequent parcels are wholly relieved from liability; if the value is less than the mortgage debt, the subsequent parcels can at most be liable in their order only for the excess of the debt over such value." (Pom. Eq., 1226; Jones on Mortgages, 722.)

Cases illustrating these rules are copiously cited by these elementary writers, under the sections of their works referred to, and the rules are so well settled that we deem any review of the cases wholly unnecessary.

Applying these rules to the case before us, how does the matter stand?

That Burson had full notice of all the transactions between Blackley and the Mayos before he took the reconveyance of a part of the land, can not be questioned.

If this reconveyance had not been made, and suit had been brought against Blackley and the Mayos to foreclose the lien, judgment would doubtless have been rendered in his favor directing all the lands to be sold, if necessary, to satisfy his debt; but the vendees of Blackley, under the uncontroverted facts of the case, would have been entitled to a decree directing the part unsold by Blackley to be first sold and the proceeds applied to the debt, and if the sum received on such a sale was found sufficient

to pay the debt, no sale of that part which Blackley had sold would have been necessary or could have been made.

If, under such a sale, money enough was not raised to pay the debt, then that sold by Blackley could have been sold, and so much of the proceeds as necessary applied to the debt, and any residue could have been paid to Blackley's vendees.

By taking a reconveyance to himself of a part of the land and subsequently selling it to another person, Burson has completely deprived the vendees of Blackley of the power to have that part of the land, which, as between them and Blackley, was primarily liable for the debt, sold and its proceeds applied as the unequal equities of Blackley and his vendees required.

As that part reconveyed to Burson can not now be subjected to sale, and so, by reason of his own act, he must be held to account for its value in liquidation of the debt, in whole or in part, on which he sues, unless there are other facts in the case which may change the rule.

There was no error in the rulings of the court on the matters referred to in the assignments of error above set out; and the inference from the finding of the jury is that, under the evidence, they believed the land reconveyed to Burson was of a value equal to or greater than the principal and interest due on the notes executed by Blackley.

The plaintiff asked the following charge:  "If you find said three hundred and eleven acres of land to be worth more at said date (Feb. 26, 1883) than fifteen hundred dollars, and you further find that plaintiff did not know that it was worth more, and that he was induced to believe that he was allowing a fair price for the same when he bought it back from Blackley by representations made to him by the defendants Mayo, then you are instructed that you will not further consider the value of said land, and the said one hundred acres would be subject to plaintiff's lien." This charge was refused.

The defense which this was intended to meet was fully pleaded, and there was no pleading by the plaintiff seeking to avoid it by alleging the matters contained in the charge in avoidance of it.

The mere ignorance of Burson of the real value of the land, he having knowledge of the equities of the defendants Mayo, is a matter of no importance.  It was his duty to know its real value and to allow it when he took the reconveyance, and the equities of the defendants can not be defeated by the fact that he may have been ignorant of the real value.

Besides, there was no evidence which could have sustained such a defense as the whole charge attempted to place before the jury.

The statements made by one of the defendants, as to the value of the land, were made long before the reconveyance to the plaintiff, and were not such as any prudent man ought to have acted upon, and there is no pretense that they were acted upon. These things being true, the court properly refused the charge.

Another assignment is that:

"The court erred in overruling plaintiff's general demurrer to defendants G. W. and W. J. Mayo's amended answer, in this: They ask that the hundred acres of land purchased by them from defendant, G. I. Blackley, be protected from plaintiff's lien, on the ground of the following allegations of settlement by defendant Blackley of the two one thousand dollar foreclosure money notes executed by him to plaintiff, to wit: Deed of twenty-sixth of February, 1883, from Blackley to plaintiff, of three hundred and eleven acres of land for fifteen hundred dollars, and delivery to plaintiff of the one hundred and fifty dollar purchase money notes executed by defendants G. W. and W. J. Mayo to G. I. Blackley for the one hundred acres of the land and promise by him to plaintiff of one hundred and fifty dollars more, without any allegation in said plea of a tender of payment or offer to pay to plaintiff the amount due upon said one hundred and fifty dollar note."

If the defendants had been seeking relief equivalent to specific performance of an executory contract to convey land to them, it would have been incumbent upon them to pay or offer to pay the note for one hundred and fifty dollars executed by them to Blackley, which had gone into the hands of the plaintiff; but they were not seeking any such relief, and the court did not err in the respect claimed.

If the plaintiff had sought to recover on the note executed by the defendants Mayo, being the holder thereof, we see no reason why he might not have done so, and have caused the one hundred acres bought by them from Blackley to be sold to satisfy the sum due on it.

He, however, sought no such relief, but brought his action to recover the balance due to him on the note executed to him by Blackley, which last matured.

There is no error in the judgment and it will be affirmed

*Affirmed.*

Opinion delivered November 16, 1886.