STINSON et al. v. SNEED.

(Court of Civil Appeals of Texas. Amarillo. Jan. 10, 1914. Rehearing Denied Feb. 21, 1914.)

1. CHATTEL MORTGAGES (§ 229*) — SALE BY MORTGAGOR—CONSENT OF MORTGAGEE.

On the issue of the conversion of mortgaged cotton by a sale by the mortgagor raised in a suit for the foreclosure of the mortgage lien, whether the mortgaged property had been sold with the consent of the mortgagee *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 479-483; Dec. Dig. § 229.*]

2. CHATTEL MORTGAGES (§ 219*) — SALE OF MORTGAGED PROPERTY—LIEN.

Where chattels, subject to a mortgage, are sold with the consent of the mortgagee, purchasers acquire them free from the mortgage lien.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 473-475; Dec. Dig. § 219.*]

3. VENDOR AND PURCHASER (§ 85*)—ACTIONS FOR PURCHASE PRICE—JURY QUESTION.

In a suit by a vendor of land to recover the purchase price, the question whether the contract had been mutually rescinded *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 141-143; Dec. Dig. § 85.*]

4. VENDOR AND PURCHASER (§ 87*) — CONTRACTS—RESCISSION—EFFECT.

When a contract for the sale of land is rescinded, it is wholly annulled, and the rescission carries with it a provision in the contract that the vendor should have a lien upon crops raised on the land by the vendee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 147; Dec. Dig. § 87.*]

5. ELECTION OF REMEDIES (§ 3*)—VENDOR AND PURCHASER (§ 93*) — REMEDIES OF VENDOR FOR BREACH.

Where a purchaser of land breaches his contract, the vendor may sue for specific performance and foreclose his chattel mortgage on the crops to be raised, or he may rescind and recover damages for the breach; but, to entitle him to either remedy, his pleadings must be accordingly, and the pursuit of one remedy constitutes an election.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. §§ 3, 4; Dec. Dig. § 3;* Vendor and Purchaser, Cent. Dig. §§ 153, 154; Dec. Dig. § 93.*]

6. ELECTION OF REMEDIES (§ 3*)—INCONSISTENT REMEDIES.

A vendor of land cannot rescind a contract of sale to the extent of resuming possession of the land and improvements, and at the same time affirm the contract in part by recovering a judgment for part of the contract price.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. §§ 3, 4; Dec. Dig. § 3.*]

7. VENDOR AND PURCHASER (§ 330*)—REMEDIES OF VENDOR — ACTION FOR BREACH — MEASURE OF DAMAGES.

Where a purchaser of land breaches a contract of sale, the vendor's measure of damages is the difference between the contract price and the then salable value of the land with interest from the date of the breach.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 953-956; Dec. Dig. § 330.*]

8. VENDOR AND PURCHASER (§ 126*) — CONTRACTS—RESCISSION—RECOVERY OF RENTS.

Where a purchaser of land was admitted into possession without payment of any of the purchase price, the vendor, upon rescission of the contract, is entitled to recover for the value of the use and occupation of the land, whether the rescission was by mutual agreement or because the vendor could not convey a marketable title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 229, 230, 232; Dec. Dig. § 126.*]

9. VENDOR AND PURCHASER (§ 126*) — CONTRACTS—REMEDIES OF PURCHASER.

Where a contract for the sale of land is abrogated because of the inability of the vendor to convey a marketable title, the purchaser who was admitted into possession without any payment on the purchase price is entitled to offset, as against the vendor's right of action for use and occupation, the value of his

improvements, and special damages which he may have suffered; but, if the inability of the vendor to convey good title is not the result of fraud or willfulness, the vendee cannot recover anything for the loss of his bargain.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 229, 230, 232; Dec. Dig. § 126.*]

10. MORTGAGES (§ 154*)—MORTGAGEE AS BONA FIDE PURCHASER—CONSTRUCTIVE NOTICE—RECORD.

Where one, who had a contract for the purchase of land, was not in possession at the time the owner mortgaged it, the registration of the contract as a chattel mortgage only to give the owner a lien upon crops raised by the purchaser was not constructive notice to the mortgagee.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 344–353; Dec. Dig. § 154.*]

11. VENDOR AND PURCHASER (§ 260*)—LIEN ON CROPS — RESERVATION — REGISTRATION — SUFFICIENCY OF NOTICE.

Where a contract between the owner of land and the purchaser, who was admitted into possession without any payment on the purchase price, created a lien upon the crops to be grown, and was filed and registered before the crops were grown, it is sufficient notice under the statute to perfect the owner's lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. § 260.*]

Appeal from District Court, Cottle County; Jo A. P. Dickson, Judge.

Action by J. B. Sneed against B. W. Stinson and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Bell & Bell, of Paducah, and Dashiell, Crumbaugh & Coon, of Terrell, for appellants. Jas. M. Whatley and Browne & Hawkins, all of Paducah, for appellee.

HALL, J. Appellee, plaintiff in the court below, filed this suit in the district court of Cottle county, against B. W. Stinson, S. S. Forest, J. A. Clary, Seymour Thompson, J. P. Watkins, Mays, Street & Alexander, Burke Wilkerson, and W. I. Pace, to recover the several sums of money hereinafter set out. On December 1, 1911, appellee Sneed and appellant Stinson entered into a contract for the sale of 160 acres of land, situated in Cottle county. It was stipulated that Stinson should pay $31.50 per acre for the land as follows: $3.50 per acre January 1, 1915; $3 per acre January 1, 1917; $5 per acre January 1, 1919; and $20.50 per acre January 1, 1922; that Stinson should have possession by January 1, 1912; that he should farm the same during 1912; that Sneed should have a lien on the crops to secure the performance of the contract on the part of Stinson; that by January 1, 1913, Stinson should place improvements on the land to the extent of $750 or pay that sum in cash, which payment should be credited upon total purchase price, Stinson to pay taxes for the year 1912; that for the deferred payments Stinson should execute to Sneed his several promissory notes, secured by a vendor's lien reserved in the deed, and further secured by deed of trust; that Sneed should execute to Stinson a conveyance; and that the notes and deed of trust should be executed by Stinson when the improvements were placed by him on the land or the $750 payment, as provided in the contract, should be made by him. The contract further provided as follows: "The said notes to bear interest at eight per cent. per annum, payable annually from January 1, 1912, and providing failure to pay one may mature all, also attorney's fees for collection." On the 16th day of December, 1911, the following addition was made to said contract: "Said Sneed has this day sold to said Stinson on same terms and conditions as set forth in the foregoing contract, eighty additional acres of land lying immediately south of and adjoining the tract above described." The plaintiff alleged a breach of the contract and sued for damages amounting to $1,578.30, alleging that the contract was duly filed as a chattel mortgage and that the other defendants had purchased cotton raised by Stinson on the land, and prayed for judgment against them for the value of the cotton. Defendant Pace was alleged to be a nonresident, owning property in Cottle county, and writs of attachment were issued against both Stinson and Pace. There was a prayer for foreclosure of the chattel mortgage lien. The defendant Stinson answered by general and special demurrer, general denial, and specially alleged that he made the contract sued on, but that it was understood plaintiff should convey the land in fee, free of liens; that after he had gone into possession he learned that plaintiff had incumbered the land to secure a lien of $35,000, which lien had been duly recorded and that thereby plaintiff had breached the contract; that on January 1st he was ready, able, and willing to perform his part of the contract, and would have done so if plaintiff had made him a deed in fee conveying the land, free of incumbrances; that plaintiff had never tendered him a deed and he pleaded in reconvention for damages to his cotton by reason of injuries thereto by plaintiff's cattle; alleged that the land had been surrendered to plaintiff; that he had put improvements on same to the extent of $125; that the land had increased in value to $35 per acre; and prayed for judgment against plaintiff for the difference in the value of the land. The remaining defendants, who were sued for conversion of the cotton covered by the mortgage, alleged that they purchased the same in the open market; that plaintiff had consented to its sale, and by his acquiescence was estopped from recovering judgment against them. The defendant Pace further moved to quash the writ of attachment and reconvened for actual and exem-

plary damages for the wrongful levy of the writ upon land belonging to him.

[1, 2] The court instructed a verdict for plaintiff against all of the defendants, except Clary and Wilkerson, for the sum of $1,499, principal, interest, and attorney's fees, and entered a judgment accordingly. As near as we can ascertain, this judgment was rendered for the $750 cash payment, claimed to be due under the contract, for interest on the remainder of the purchase price agreed to be paid, attorney's fees at the rate of 10 per cent. upon both of said amounts, and possibly interest at the rate of 6 per cent. upon the attorney's fees. If so, this was error. At any rate, the court clearly erred in instructing a verdict against any one. If the contract has not been rescinded, then, in so far as the purchasers of the cotton are concerned, the evidence is sufficient to raise the issue of consent on the part of Sneed to the sale of the cotton by Stinson. Of course, if the cotton was sold with Sneed's consent, Pace, Forest, and the other defendants purchased the same free of the incumbrance and were not responsible to Sneed for conversion.

[3] But the evidence tends to show that the contract of sale had been rescinded by abandonment and by the acts of the parties, if not by an agreement to that effect on the part of Sneed and Stinson. The evidence shows that Stinson abandoned the premises some time about the end of the year 1912, and since his abandonment Sneed has been in possession of the land and of the improvements placed thereon by Stinson. We are not able to determine from this record whether the contract has been rescinded, either by agreement or acts of the parties. The facts bearing upon that issue are not fully brought out. Milby v. Hester, 94 S. W. 178; Bynum v. Preston, 69 Tex. 287, 6 S. W. 428, 5 Am. St. Rep. 49; Fullerton v. Doyle, 18 Tex. 3. To say the least, the question of rescission and abandonment, under the record in its present state, was one for the jury. If the contract has been rescinded, Sneed is not entitled to recover any amount in a suit based upon it.

[4] When a contract is rescinded it is annulled and abrogated and the rights of the parties under it are extinguished, and if any cause of action exists it is necessarily independent of the contract and separate and apart from any of its terms. The lien upon the cotton was contained in the contract and was inserted in it to secure the performance thereof upon the part of Stinson. If the contract has been rescinded, of course the lien is destroyed and cancelled with it.

[5, 6] If Stinson breached the contract, Sneed had two remedies: He could sue for specific performance, foreclose his chattel mortgage, and recover a judgment in accordance with the obligations set out in the contract; or he could rescind and recover his damages for the breach. But to entitle him to either remedy his pleadings must be framed accordingly and his prayer made in the alternative. Griffin v. Williams, 142 S. W. 981; Seiber v. Newman, 151 S. W. 585; Wolf v. Lackman, 20 S. W. 867; Stone Land & Cattle Co. v. Boon, 73 Tex. 548, 11 S. W. 544. But he clearly cannot rescind to the extent of resuming possession of the land and improvements and at the same time affirm the contract in part by recovering a judgment for a portion of the contract price with interest and attorney's fees, and in the same judgment foreclose a lien which exists only in the contract. Burson v. Blackley, 67 Tex. 5, 2 S. W. 668; De Perez v. Everett, 73 Tex. 431, 11 S. W. 388; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302. The remedies being inconsistent, if his pleadings entitled him to either remedy and that alone, he will be held to have elected; hence the necessity of an amendment of the pleadings on both sides before another trial.

[7] If we consider the case in the present state of the pleadings as a suit to recover damages after rescission, the judgment is manifestly wrong because the proper measure of damages has not been awarded. If Sneed was able and willing to convey the title, and Stinson, without just cause, refused to complete the purchase, and in the meantime the value of the land had declined, then Sneed's measure of damages was the difference between the contract price and the salable value, with interest thereon from the date of the breach (Kempner v. Heidenheimer, 65 Tex. 591; Monroe v. South, 64 S. W. 1014), and not the unpaid purchase money, nor any part thereof with interest, as has been decreed by the court (Smith v. Lander, 89 S. W. 19). When the fair market value of the land at the date of the breach of the contract exceeds the stipulated price, the vendor's damages would be nominal. Evrit v. Bancroft, 22 Ohio St. 172.

[8, 9] The record discloses that Stinson used and occupied the premises for 12 months, and that he has never paid any part of the purchase price, and we think Sneed should also recover for the value of the use and occupation of the land, whether the contract was rescinded by agreement (Terrill v. De Witt, 20 Tex. 257; Jones v. Hutchinson, 21 Tex. 370), or because Sneed was unable to convey a marketable title, in the absence of fraud or willful refusal on his part (Burwell v. Sollock, 32 S. W. 844); but, in the latter event, Stinson would be entitled to offset, against Sneed's claim for use and occupation, the value of his improvements and such special damages, if any, to which he may be entitled by reason of having been induced to enter into the contract. However, Stinson would not be entitled to offset the value of his improvements if he refused to consummate the sale because of insolvency. First National Bank of Austin v. Jackson, 40 S. W.

833; Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290. In the absence of fraud or willfulness on the part of Sneed to convey, Stinson cannot recover anything for the loss of his bargain, such as an enhancement in the value of the land over the contract price; but is limited to such proper special damages as he may have incurred, such as the payment of taxes, the cost of examining abstract, etc. Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120; Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105; Dobson v. Zimmerman, 55 Tex. Civ. App. 394, 118 S. W. 237; Adams v. Hughes, 140 S. W. 1163; Hall v. York, 16 Tex. 23; s. c., 22 Tex. 643; Durst v. Swift, 11 Tex. 283; Sutton v. Page, 4 Tex. 142; Wheeler v. Styles, 28 Tex. 240; Vaughn v. Bank, 126 S. W. 690.

[10] The record fails to show whether or not Stinson was in actual possession of the land when Sneed executed the mortgage for $35,000. If Stinson was not in possession at that time and the mortgagee had no actual knowledge of his right, then the mortgage would be a prior incumbrance. The contract between Sneed and Stinson was not acknowledged and was registered as a chattel mortgage only, and was therefore not notice to the mortgagee holding the mortgage, securing the $35,000. The record is silent as to the date of this mortgage, as well as to the possession of Stinson at that time. In our opinion, its effect upon the marketable condition of Stinson's title after it had been recorded was a question of fact for the jury.

[11] The contract between the parties hereto, creating a lien upon the cotton, was filed and registered before the cotton was sold, which was sufficient notice under the statute. Vickers v. Carnohan, 23 S. W. 338.

The remaining assignments are either without merit, or the errors complained of will not arise upon another trial.

Because of the error of the court in instructing a verdict and in overruling the demurrers, the judgment is reversed, and the cause remanded.