**MYRICKS v. HEILBRON.**

No. 6043.

Court of Civil Appeals of Texas. Texarkana.
April 8, 1943.

Wm. V. Brown, of Texarkana, for appellant.

Wheeler, Atchley & Vance, of Texarkana, for appellee.

JOHNSON, Chief Justice.

This suit was filed by S. Myricks against Louis Heilbron on October 28, 1941, in trespass to try title to a certain tract of land located in Bowie County. Defendant answered by plea of not guilty and specially pleaded that on or about November 1, 1936, plaintiff was in possession of the land, holding same under an executory contract of sale evidenced by deed expressly retaining a vendor's lien to secure payment of the purchase price; and that on said date, plaintiff being unable to pay the purchase money, disclaimed all interest in the land and surrendered possession to defendant who went into peaceable possession of same; and believing that he had good title thereto, has made valuable and permanent improvements to the extent of $108.18. Plaintiff by supplemental petition specially pleaded the four-year statute of limitation, Vernon's Civil Statutes, Article 5520, in bar of the vendor's lien and superior title retained in the note and deed. Trial of the case resulted in verdict and judgment for defendant, from which plaintiff appealed.

Appellant, under points 1, 2 and 3, raises the contention that the answers of the jury to special issues Nos. 1 and 2 are without support in the evidence. In answer to No. 1 the jury found that appellant agreed to deliver back the possession of the land to appellee in consideration of the cancellation of the indebtedness remaining due thereon; and in answer to No. 2 found that after such agreement appellee went into possession and made valuable improvements on the land.

828

The record shows that appellant purchased the land in 1922 for $50 cash and the execution and delivery of his note for $1,250 payable in fifteen equal installments; the first installment becoming due November·15, 1922, and one due on the 15th of November of each following year to and including November 15, 1936. The note bore interest from date at the rate of 8% per annum. Vendor's lien was expressly retained in the note and in the deed, securing payment of the unpaid purchase money.

Mrs. Olive Preston, witness for appellee, testified that she had been in the employment of appellee for the past twenty years and was familiar with his books and accounts; that on November 12, 1936, there was a balance due of principal and interest by appellant on the note in question amounting to $1,447.39, after all credits had been deducted:

"Q. At that time was he told how much was due on the note? A. Yes.

"Q. What, if anything, happened about the land or note at that time? A. He was buying another house from us, and he had completed his payments on that, and he said that he would release all interest in this property, the balance on the account at that time was over $1400. His original purchase price was $1250, and he said that the land had decreased in value and he didn't believe he wanted to pay the difference, and we wanted our interest attached to the principal not paid, and there was some back taxes due on it, and he gave me a tax statement of that, and I told him since he had full benefit of the land he was due to pay the taxes, $17 and something. And he said he would get the money up for the taxes. He recognized the fact that he should pay those taxes, and would get the money. And I had his deed and abstract to his little cottage he was buying in Texarkana, and I said, 'I will keep these until you bring in the $17 and turn the property over to us,' and he agreed to it.

"Q. Since that date has he made any claims to the 20 acres? A. No, he has been back, but never made any claim to it.

"Q. What did he say? A. He came in and asked if I still had his deed and abstract, and I told him yes, he could pick it up any time he wanted to, that we still held that little tax statement and would still like for him to pay the $17 on it.

"Q. Since November 12, 1936, who, if any one, has had possession of that twenty acres, if you know? A. Mr. Louis Heilbron. He has had possession of it.

"Q. Has he done anything to the land or the house, or not? A. Yes, he re-roofed it, and the foundation had deteriorated, and he repaired that."

She further testified that the expense of the repairs amounted to $108, and that the land was rented by appellee to tenants after appellant surrendered it.

Appellee testified that appellant told him that he owed more on the land than it was worth and that he would just surrender it; that after appellant surrendered the land to him, appellee rented to tenants and that he repaired the house. On cross-examination he testified that at the time of surrendering the land appellant agreed to pay the $17 back taxes due on it; and

"Q. You were not going to consider the deal closed until he paid that $17, were you? A. No, sir."

Appellant has not paid the $17. He has not paid any of the purchase money since surrendering the land in 1936, and does not now offer to pay it. The unpaid purchase money was far in excess of the value of the land at the time of surrender, and now, according to the undisputed testimony.

It is contended that because of the testimony of appellee that he did not consider "the deal closed" under which appellant surrendered the land until he paid the $17, and because appellant had failed to pay the $17, that the answers of the jury to special issues Nos. 1 and 2 are contrary to such undisputed testimony. We do not think that the testimony is in conflict with the finding of the jury complained of. The fact that the agreement under which appellant surrendered the land was not completely carried out by appellant, in failing to pay the $17, does not authorize appellant to recover the land. The matter of controlling importance is that appellant claims under an executory contract wherein the deed expressly reserves the vendor's lien to secure payment of purchase money. Appellee, holding the superior title, is in peaceable possession. No equities are pleaded or shown in favor of appellant. In such circumstances, appellant can not recover without performing or offering to perform the contract under which he claims, by paying the purchase money. Johnson v. Smith, 115 Tex. 193, 280 S.W. 158; Mozoch v. Sugg, Tex.Com.App., 254 S.W. 770; Rowan v. Barfoot, Tex.

Civ.App., 54 S.W.2d 830, writ refused; Tilley v. Kangerga, Tex.Civ.App., 83 S.W.2d 787, writ refused; 43 T. J. 259 Sec. 155.

■ The *parol* agreement surrendering possession of the land is not, as contended, within the statute of frauds, R. S. Article 3995. In Johnson v. Smith, supra [115 Tex. 193, 280 S.W. 160], it is said: "Under the express reservation of the vendor's lien in Sherrod's deed, the superior title to the land remained in Sherrod until the purchase-money notes were paid. Masterson v. Cohen, 46 Tex. [520], 523, 524; Hamblen v. Folts, 70 Tex. [132], 135, 7 S.W. 834. No title to nor interest in the land was or could be acquired by Elymas Johnson save such as was conditioned on payment of the notes. Howard v. Davis, 6 Tex. [174], 182; Roosevelt v. Davis, 49 Tex. [463] 472; Evans v. Ashe, 50 Tex.Civ.App. [54], 63, [108 S.W. 1190]. The contract of sale could have been rescinded by *parol* agreement between Sherrod and Elymas Johnson or by Sherrod alone on Elymas Johnson's default to pay the notes or repudiation of his obligation to pay same. Thompson v. Robinson, 93 Tex. [165], 170, 54 S.W. 243, 77 Am.St. Rep. 843; Davis v. Cox, Tex.Com.App., 239 S.W. [917] 918." (Italics ours.)

■ The vendor's lien note was not barred under the four-year statute (Vernon's Civ.St. Art. 5520) at the time appellee acquired possession under the rescission agreement in 1936. The fact that the note was barred in 1941 at the time appellant filed his suit, did not, as contended, prevent appellee who was in possession from asserting his superior title to the land, as a defense to appellant's suit. Benn v. Security Realty & Development Co., Tex.Civ. App., 54 S.W.2d 146, writ refused and authorities there cited. If facts had been shown giving appellant the right of redemption, then appellee would have held the position similar to that of a mortgagee in possession, against whom limitation does not run. Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; Connor Bros. v. Williams, 130 Tex. 572, 112 S.W.2d 709; Elliott v. C. C. Slaughter Co., Tex.Civ.App., 236 S.W. 1114. But, under the facts as here presented, the entire contract, the deed as well as the note, was by agreement and acts of the parties in 1936 effectively rescinded. A valid rescission abrogates the contract of sale "as completely as though the con-

tract had never been made." 43 T. J. 377, Sec. 213. Therefore Article 5520, Vernon's Civil Statutes, has no application to the facts of this suit.

The judgment of the trial court decrees "that plaintiff, S. Myricks, take nothing against defendant, Louis Heilbron * * * and that the defendant, Louis Heilbron, recover of and from plaintiff, S. Myricks, any and all right, title, claim or interest in and to the land * * *." It is contended that the judgment is erroneous and should be reversed because, after having decreed that plaintiff take nothing, it further decrees title in the defendant and that the decree vesting title in the defendant was not prayed for in his pleadings.

■ In an action of trespass to try title on part of plaintiff and a plea of not guilty on part of defendant, a judgment decreeing that plaintiff "take nothing" has the legal effect of divesting plaintiff of whatever title he may have, and to vest title in the defendant, therefore the fact that the judgment expressly vested title in defendant would not be erroneous. Houston & T. C. Ry. v. McGeehee, 49 Tex. 481; French v. Olive, 67 Tex. 400, 3 S.W. 568; Wilson v. Swasey, Tex.Sup., 20 S.W. 48; 41 T. J. 679; 41 T. J. 679 Sec. 171.

The judgment of the trial court is affirmed.