**H. D. DEAN, Appellant,**

v.

**The PIONEER CO–OPERATIVE FIRE INSURANCE COMPANY,**
**Appellee.**

**No. 15474.**

United States Court of Appeals
Fifth Circuit.

March 16, 1956.

Joe H. Tonahill, Jasper, Tex., Jerry P. Fortenberry, Jasper, Tex., for appellant.

Robert O. Campbell, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

BROWN, Circuit Judge.

The question is whether a vendor of property whose purchaser is then in substantial default acquires the full insurance specified under a Texas Standard Fire Policy issued to him as owner by an underwriter who is fully informed on the status of title, the sale, and default.

Dean owned the land and the frame buildings involved. On July 2, 1952, by formal deed, he conveyed the property to Lowe, expressly reserving a vendor's lien to secure payment of the remainder ($1442.50) of the purchase price ($1500.00) due in monthly installments of $75.00. Simultaneously, Lowe executed a promissory note and a conventional deed of trust further to secure the vendor's lien. But by December 2, Lowe, who by then should have paid $375.00, had paid but $80.00 and, in addition, had failed to procure and maintain *full* fire insurance as required.

About December 8, 1952, Dean, desiring fire insurance, disclosed all of this information to the insurance solicitor who, in turn, relayed it to the authorized agent of the insurer. In each step this included the fact[1] of Lowe's substantial

1. The court did not expressly find this, but according, as he did, full credence to Dean's testimony of disclosure of the title situation and the solicitor's testimony of relaying this information to the underwriter's agent, it is certain that he meant to credit, as do we, this fact which is otherwise uncontradicted.

default and Dean's declared purpose to "take the property back."

A standard policy naming him as "owner" was issued effective December 8, 1953, for the face amount of $4,000.-00. Treating him as the "owner"[2] he represented himself to be, the policy, significantly, left the mortgagee and loss payable blanks unfilled.

The situation continued unchanged until March 28, 1953, two days before the total destruction of the premises by fire. On that day, Lowe returned the original deed to Dean with Lowe and his wife endorsing on the back of it, "J. H. Lowe has turned the place back to Mr. Dean." Lowe became Dean's tenant as of that time at a stipulated monthly rental. The insurer did not know of this action until after the fire.

On these facts, fully supported and not challenged, the District Judge, apparently of the view that recognition of the action of March 28 as a rescission would work such a charge in ownership as to forfeit all coverage held, as a conclusion of law, that it was but an "attempted rescission" not charging ownership. Preliminary to that, he held, in what he denominated a "fact finding",[3] that Dean " * * * only intended to insure his interest in the property, which was the amount of the vendor's lien note" of $1442.50.

A Texas Standard Fire Policy no longer contains a warranty of sole and absolute ownership. The requirement now is a truthful disclosure of the interest of the assured[4] and a policy provision defeating[5] liability "following a change in ownership." It is agreed that the standard policy form is used either for absolute owners or mortgagees, and that the premium payable, computed on manual rates, is not dependent on the assured's ownership, and indeed, both interests may be covered without added premium by the simple expedient of a written endorsement.[6]

Since insurance is an essential facility in business affairs, this seems highly significant. A vendor whose purchaser is in

2. Dean's complaint alleged that he "was the owner" of the building. The trial court, in addition to detailed fact findings also made this recital in the formal judgment: "The Court further finds that the material averments contained in the plaintiff's original complaint are true * * *."

3. This "fact finding" is no impediment to independent review by us, Fed.Rules Civ. Proc. rule 52(a), 28 U.S.C.A., since it was actually an inference of the legal result flowing from this transaction and hence more accurately a "conclusion of law", and, in any case, there is literally no evidence, Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, to support it as a "fact": Dean described fully his dealings with Lowe, state of the title, the sale and default, but if it was his "intention to insure only $1442.50" this is what the law attached to the occurrence and not what the parties did.

4. These changes were brought about in 1943 when the Texas Insurance regulatory agency adopted the New York form. The policy provides: "This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this in-

surance, or the subject thereof, *or the interest of the insured therein,* or in case of any fraud or false swearing by the insured relating thereto." (Emphasis supplied.)

5. In the Basic Conditions it provides: "Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring: * * * (d) following a change in ownership of the insured property; * * *."

6. E. g., insurer's brief: " * * * The policy itself will not reveal the nature of the insured's interest in the property. The true nature of the insured's interest or title and his dealings with the agent must be examined in order to determine what, if any, interest has been insured * * *." " * * * Dean would have been charged the same premium and have been issued the same policy regardless of whether he was the owner or mortgagee of the subject premises. Neither the policy nor the premium will reflect the interest of the insured. * * * there would be no additional charge for this endorsement or as a matter of fact for any endorsement or change in a policy unless, of course, the amount of coverage was increased."

default on payments and the covenant to insure, anticipating the necessity of almost certain and imminent foreclosure (used colloquially) seeks insurance to protect his interest. In that situation he has, in a very real sense, something much more than his debt at risk. For he has a worthless debtor. If the debtor defaults altogether (as anticipated and as done here), the property is his in actuality and in it, he has not the limited security interest at risk—he has the value of the entire property. There is nothing in the Standard Policy (nor in any applicable administrative regulations) to prevent an underwriter insuring those actual risks adhering in actual ownership of those interests (the policy does not speak in terms of "title") provided only that there has been a truthful adequate disclosure. The businessman, faced with these practicalities, is not required to run the further risk of trying to compress this amorphous situation into the tight compartments of common law or statutory titles or speculate as to the exact moment a new tag must be put on the "ownership" by suitable endorsement. This is not to say that the policy starts out insuring one and ends in insuring another interest. We are saying only that the ownership comprehends what his actual interest is, which here includes the fact of default and the imminent "foreclosure."

■ This is altogether consistent with the general concept of the titles and the nature of the interests involved in a sale with an express retention of a vendor's lien. The legal title remains in the vendor. It is a "superior", "paramount", "better", "best", title until the purchase money is paid according to the contract, 43A Texas Jurisprudence, Vendor and Purchaser, § 253; Johnson v. Smith, 115 Tex. 193, 280 S.W. 158; Bunn v. City of Laredo, Tex.Com.App., 245 S.W. 426, 429, adopted by the Texas Supreme Court. The purchaser, of course, acquires an equitable title with possession permitting him to ripen it into a full ownership upon performance by him of his obligation to pay. 43A Tex-

as Jurisprudence, Vendor and Purchaser, § 258. But when the purchaser defaults in his promise to pay, the vendor may rescind by which the title and the *right to possession* is reinvested in him as completely as though the contract had never been made. 43A Texas Jurisprudence, Vendor and Purchaser, §§ 513, 522; Burson v. Blackley, 67 Tex. 5, 2 S.W. 668; Myricks v. Heilbron, Tex. Civ.App., 170 S.W.2d 827, 829. The default, itself, does not amount to an automatic rescission, but it can be accomplished without formal reconveyance by one of many ways effectively reflecting the assertion of that right by the vendor. Davis v. Cox, Tex.Com.App., 239 S.W. 917 adopted by Texas Supreme Court, see 10 Tex.Law Review 244; at least within four years of the maturity of the debt, see Article 5520 Revised Civil Statutes of Texas, cf. Myricks v. Heilbron, supra, and Hart v. Winsett, Tex.Civ.App., 164 S.W.2d 783, reversed on other grounds, 141 Tex. 312, 171 S.W. 2d 853. The right of rescission rests upon the vendor's *right* to terminate because of the purchaser's default or failure to perform.

On December 8, Lowe was in substantial default. This continued without change to March 28.

■ And, whatever the consequence of the formal rescission at that time, in a situation involving real property titles directly, we are further clear that it would not be deemed a "change of ownership" under Texas insurance law. We emphasize here that Dean was the only insured. He has not attempted to make his insurance available to another, nor procure for himself the benefit of a contract between the underwriter and some third person. He is not trying to get more than he bought and paid for.

Texas declines to read into insurance policies the rigid rules of property title law. The transaction is viewed in the light of the nature of the insurance contract and the reasonable requirements of the underwriter. If, therefore, the occurrence does not increase the motive

to destroy or diminish the desire to protect the property, the change in the legal title is considered to be inconsequential. Mercury Fire Ins. Co. v. Dunaway, Tex. Civ.App., 74 S.W.2d 418, error refused; opinion by Judge Alexander, later Chief Justice Texas Supreme Court; Insurance Co. of North America v. O'Bannon, 109 Tex. 281, 206 S.W. 814, 815, 1 A.L.R. 1407; British General Ins. Co. v. Stamps, Tex.Civ.App., 57 S.W.2d 638, 640, opinion by Judge Hickman, now Chief Justice Texas Supreme Court; Walters v. Century Lloyds Ins. Co., Tex., 273 S.W.2d 66; 24 Texas Jurisprudence, Insurance, § 203, page 968; Southern Underwriters v. Mahan, Tex.Civ.App., 126 S.W. 2d 802, error dismissed judgment correct; Texas Banking & Ins. Co. v. Cohen, 47 Tex. 406, 26 Am.Rep. 298; Delaware Ins. Co. of Philadelphia v. Hill, Tex.Civ.App., 127 S.W. 283, error refused. Since Dean's interest, if it were changing after December 8, was being enhanced, not lessened, it met the Texas test, "Vigilance in the care of the property is not likely to be diminished when the assured is the only one who can possibly suffer by its destruction", New Orleans Ins. Co. v. Gordon, 68 Tex. 144, 149, 3 S.W. 718, 720. See, Appleman, Insurance Law, § 2741. Of course, where the actual interest of the assured is reduced, the motives to destroy and protect, affected proportionately, make this a material change, Lowe v. Michigan Fire & Marine Ins. Co., Tex.Civ.App., 236 S.W.2d 168; Springfield Fire & Marine Ins. Co. v. Morgan, Tex.Civ.App., 202 S.W. 784; Rio Grande National Life Ins. Co. v. Hardware Dealers Mutual Fire Ins. Co., Tex.Civ.App., 209 S.W.2d 654, NRE; Continental Ins. Co. v. Michaels, Tex.Civ.App., 13 S.W.2d 465; Traders & General Ins. Co. v. Emmert, Tex.Civ.App., 76 S.W.2d 208, error refused.

Finally, the underwriter having delivered its policy with full knowledge of all of these facts cannot now contend that what Dean got was something less than what he bought and paid for, or that the contract by endorsements or different nomenclature should have been differently composed. Baker v. Liverpool & London & Globe Ins. Co., Ltd., Tex.Civ.App., 275 S.W. 316; New York Fire Ins. Co. v. Reed, Tex.Civ.App., 138 S.W.2d 138; St. Paul Fire & Marine Ins. Co. v. Kitchen, Tex.Com.App., 271 S.W. 893; New Jersey Fire Ins. Co. v. Baird, Tex.Civ.App., 187 S.W. 356; Mecca Fire Ins. Co. v. Smith, Tex.Civ.App., 135 S.W. 688.

 The Judgment for the amount of the lien ($1442.50) is therefore reversed and here modified, and as modified, affirmed, to adjudge the full amount of the policy to Dean, Article 6.13, V.A.T.S. Insurance Code.

Reversed, and modified.