**Morris WEISFELD, d/b/a M & W Fruit Company,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY.**

Civ. A. No. 63–B–79.

United States District Court
S. D. Texas,
Brownsville Division.

Dec. 23, 1964.

Billy B. Goldberg, Houston, Tex., for plaintiff.

Fulbright, Crooker, Freeman, Bates & Jaworski, Newton Gresham, Houston, Tex., for defendant.

GARZA, District Judge.

Plaintiff brought this action to recover on a Texas standard fire insurance policy issued by Defendant in the amount of $15,000.00 on a packing shed and $10,-000.00 on the furniture, fixtures and machinery therein.

Before the Court is Defendant's motion for summary judgment, alleging that from the pleadings and depositions on file there is no genuine issue as to any material fact, and that Defendant is entitled to a judgment as a matter of law.

The policy sued upon was issued by Defendant on April 8, 1962, with an expiration date of April 8, 1967. The named insured was Morris Weisfeld, d/b/a M & W Fruit Company. The described packing shed was owned by Morris Weisfeld, and the furniture, fixtures and machinery were owned by a partnership composed of Morris Weisfeld and his two sons, doing business as M & W Fruit Company. The Weisfelds employed James W. Johnson, a certified public accountant who was also an attorney, to take all steps necessary in obtaining for them a loan from the Small Business Administration. In order to meet the requirements of the S.B.A. it was necessary to re-activate the corporate entity known as M.W. Fruit Company, Inc., which had been in existence since 1959, but had not done business as a corporation. It was also necessary to obtain fire insurance on the property in the amount of $71,000.00 with the loss payable to the Small Business Administration as mortgagee. Mr. Johnson made arrangements with the Whitsett & Ralston Insurance Agency, which agency had written the policy sued upon here, to obtain the insurance required by the S.B.A. The Weisfelds had nothing to do with the transactions regarding the fire insurance.

Mr. Johnson requested that the Whitsett & Ralston Agency issue fire insurance policies in the amount of $71,000.00, naming the M.W. Fruit Company, Inc., as insured and the Small Business Administration as mortgagee, and four

policies totalling this amount were delivered to Johnson. They showed March 6, 1963, as the date of issuance, but were to take effect when the property was transferred by the Weisfelds to the corporation.

No request was made by the Weisfelds or by Mr. Johnson that the existing policy be kept in force, and in fact Mr. Whitsett told Johnson that it would expire. Mr. Johnson understood in his own mind that there would be a short period of time when both the new policies and the old policy sued upon here would be in effect, and he planned to cancel the old policy at the end of the month in which the property was transferred to the corporation. He does not recall ever making these thoughts known to the insurance agency.

On March 11, 1963, the real estate on which the packing shed and other property was located was conveyed by deed from Morris Weisfeld and wife to the corporation. The furniture, machinery and equipment was conveyed by bill of sale executed by the three Weisfelds and their wives, who composed the partnership. Morris Weisfeld was to receive 66.25 per cent of the stock of the corporation, the remainder to be owned by his two sons.

The day after these transfers and the closing of the loan, March 12, 1963, the property was destroyed by fire.

Plaintiff contends that his equity in the property amounted to slightly more than $25,000.00 over and above the $71,000.00 payable to S.B.A.

The policy sued upon contained the following provision:

"Unless otherwise provided in writing added hereto, this company shall not be liable for loss occurring * * * (d) following a change in ownership of the insured property; * * * *"

Defendant's motion for summary judgment is based upon the proposition that the conveyance of the insured property to the corporation constituted a change

498

in ownership which relieved Defendant of liability for loss.

Plaintiff contends that the conveyances of the insured property to a corporation in which the Weisfelds were sole stockholders was not such a change of ownership as would avoid liability. He also points to another provision in the policy under which the company could cancel the policy by giving the insured five days written notice, which Defendant admits was not done.

Plaintiff urges that Johnson, being authorized to process the loan application with the S.B.A. and obtain the insurance necessary to obtain the loan, had no authority to cancel any existing insurance.

The issue before the Court is whether or not a "change of ownership" occurred within the meaning of the quoted policy provision.

The cases involving questions of insurable interest do not appear to be applicable here, nor is there any issue involving express cancellation of the policy by either the insured or the company.

The Court will assume for the purposes of this motion that the Plaintiff had an insurable interest in the property, at least as to the 66.25 per cent represented by the corporate stock.

The policy provision regarding a change of ownership was construed in Lowe v. Michigan Fire and Marine Insurance Co., Tex.Civ.App. 1950, 236 S.W.2d 168. The court there held that the condition was valid and enforcible and had been violated by the insured when he sold the property and retained a vendor's lien for part of the purchase price.

"The insurer under a fire policy has an interest in the personality of the individual whose property was insured." 236 S.W.2d at 171.

"Conditions of a fire insurance policy forbidding any alienation of the property insured, or any change in the title, interest, or possession thereof, are valid and enforceable, and a violation thereof renders the

policy void, or is ground for avoiding it, as against the insured or parties claiming through him." 45 C.J.S. Insurance § 562.

Although such a change will avoid the policy only where there is an actual and substantial change in the condition of the insured's title or interest in the property, a conveyance from an old corporation to a re-organized corporation, or from an individual to a corporation of which he is the sole stockholder, is a prohibited change of title under a policy condition forbidding alienation or change in the title, interest, or possession of the property. 45 C.J.S. Insurance § 564.

The validity of such a provision in Texas is not open to question, although it should be strictly construed against the insurer since it is a contractual warranty that calls for a forfeiture. 32 Tex.Jur.2d, "Insurance," sec. 268.

"With occurrences that affect title to insured property, but that do not increase the motive to destroy or diminish the desire to protect it, change in legal title is inconsequential and without effect on the right of the insured to recover, but it is otherwise where material change has reduced the interest of the insured and affected proportionately the motive to destroy and protect. Of course, this principle does not control in the face of a provision of the policy declaring the insurance void for failure of the insured to notify the insurer of a change of ownership." 32 Tex.Jur.2d, "Insurance," sec. 269.

Although the insurance agency had notice of the proposed transfer of the insured property to the corporation, the request that it write a certain amount of insurance to cover the new loan was not of itself a request to continue the old policy in existence. Mr. Whitsett understood that a total amount of insurance was required, and he proposed to Johnson that the four new policies be written to meet this requirement, instead

of retaining the old insurance and merely writing enough additional coverage to meet the required amount.

Judge Brown spoke for the United States Court of Appeals for the Fifth Circuit in Dean v. Pioneer Co-operative Fire Insurance Co., 1956, 231 F.2d 18. In discussing the provision here involved, he stated:

> "Texas declines to read into insurance policies the rigid rules of property title law. The transaction is viewed in the light of the nature of the insurance contract and the reasonable requirements of the underwriter. If, therefore, the occurrence does not increase the motive to destroy or diminish the desire to protect the property, the change in the legal title is considered to be inconsequential. * * * Of course, where the actual interest of the assured is reduced, the motives to destroy and protect, affected proportionately, make this a material change, * * *." 231 F.2d at 21, and cases cited.

There is no question here that when Plaintiff conveyed his title to the real estate and packing shed to the corporation in return for 66.25 per cent of the stock, his actual interest in the property was reduced. He also joined with his two sons in conveying the partnership property to the corporation, which was a change not only in the legal title but in the character of his ownership.

This Court holds, therefore, that the conveyances described effected a material change in Plaintiff's interest, and also a change of ownership which relieved Defendant of liability under the policy sued upon. It does not appear in the pleadings or depositions filed in this cause that any genuine issue as to a material fact exists. Neither Defendant nor its agent did or omitted any act which could raise a question of waiver or estoppel. In fact, the insurance agent expressly negatived such a theory in his dealings with Mr. Johnson. Whether Johnson had authority to cancel any existing insurance or not is immaterial, since the acts relieving Defendant of liability were committed by the insured when the transfers of the property were made to the corporation.

This Court holds, therefore, that Defendant is entitled to a judgment as a matter of law, and its motion for summary judgment should be and the same is hereby granted. Judgment for the Defendant is being entered this day.

Clerk will advise counsel of this memorandum opinion and the judgment entered.